AMERICANA NURSING CENTERS, INC., et al., Plaintiffs,

v.

Caspar W. WEINBERGER, Secretary of the United States Department of Health, Education, and Welfare, et al., Defendants.

No. P–CIV–74–56.

United States District Court, S. D. Illinois, N. D.

Jan. 30, 1975.

Melvin O. Moehle, Washington, Ill., for plaintiffs.

Max J. Lipkin, Asst. U. S. Atty., Peoria, Ill., for defendants.

OPINION AND ORDER

ROBERT D. MORGAN, Chief Judge.

Twenty-three nursing homes and the parent corporation of twenty-two of them brought this action against the Secretary of Health, Education, and Welfare and three of his designated agents for declaratory and injunctive relief, alleging the denial of due process in the suspension and setoff of payments due under Title XVIII of the Social Security Act, 42 U.S.C. § 1395 et seq. (Supp. II, 1972).

Title XVIII, commonly known as Medicare, is a comprehensive federal health insurance program for the furnishing of medical care to the aged, administered by the Department of Health, Education, and Welfare. To facilitate the efficient administration of benefits provided by the Act, the Secretary of HEW is authorized to enter into contracts delegating certain administrative responsibilities to private agencies, here the defendant insurance companies, which act as fiscal intermediaries between providers of medical services and the Department. Under these contractual arrangements, the company determines rates of payment, makes disbursement of funds based upon the provider's prospective estimates of costs, and audits the records of the provider to ascertain if proper payments are being made. Plaintiffs are providers of skilled nursing services qualified under 42 U.S.C. § 1395x(j). Defendants, Blue Cross Association, Mutual of Omaha Insurance

Company, and Aetna Life & Casualty Company were such fiscal intermediaries prior to January 1, 1969. Since that date, defendant Aetna has been the sole such intermediary. This case involves the amount of reimbursement due plaintiffs under the Medicare program.

During fiscal years ending December 31, 1967 and December 31, 1968, plaintiffs received interim payments from defendants for services rendered to Medicare beneficiaries based upon estimated cost. Pursuant to the requirements of the Act, plaintiffs filed annual reports which were later audited by the intermediaries. As a result of those audits, a dispute arose regarding the reimbursements of plaintiffs for the "reasonable cost" of certain nursing care and certain "start-up" costs. Total amounts of approximately $445,748 in nursing care costs and approximately $184,622 in "start-up" costs are involved, a portion of which defendants contend plaintiffs were overpaid, and the balance of which was never paid to plaintiffs. Plaintiffs allege they have objected to these cost determinations and have requested a full and fair administrative hearing which has not yet been or will not be granted by the intermediaries. Plaintiffs further allege that, in order to recoup the alleged overpayments, defendants have withheld some $400,000 from payments rightfully due, and threaten to continue to withhold from future interim payments some $480,000. The United States Attorney appears for all defendants.

By Order dated June 27, 1974, this court enjoined the further withholding of funds and required plaintiffs to post security in the amount of $309,283. This matter now comes before the court on Defendants' Motion to Dismiss for lack of jurisdiction and for failure to exhaust administrative remedies. The jurisdictional question should be decided first.

Plaintiffs submit that their declaratory judgment action, authorized by 28 U.S.C. §§ 2201 and 2202, is otherwise maintainable by virtue of general federal question jurisdiction, 28 U.S.C. § 1331, or by virtue of Section 10 of the Administrative Procedure Act, 5 U.S.C. § 701 et seq. Defendants contend that Section 405(h) of Title 42 U.S.C., which is incorporated in the Medicare Act by 42 U.S.C. § 1395ii, precludes judicial review of the matters now in controversy. Since 405(h) dictates that the Secretary's decisions shall be reviewed only as provided in the Act, and since for the accounting periods in question there are no explicit provisions for judicial review, defendants contend, *ipso facto*, this court has no power to act on the complaint. Such a position is untenable. There exists a presumption of judicial reviewability of federal agency action unless Congress has asserted "clearly and convincingly" to the contrary. Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). Where agency action is challenged on due process grounds, it is "immune from judicial review, if ever, only by the plainest manifestation of congressional intent to that effect." Gonzalez v. Freeman, 118 U.S.App.D.C. 180, 334 F.2d 570, 575 (1964). A close examination of the Medicare Act and its amendments reveals no "clear and convincing" intent of the Congress to preclude judicial review of suspension of payment determinations. It simply makes no provision. A better reading of Section 405(h) of Title 42 is to understand it applicable only to cases in which review is otherwise provided by the Act. "Where the Medicare Act establishes procedures for review of the Secretary's decision, a court may not review that decision by any other means. However, where the Act does not provide such procedures, section 405(h) does not preclude review." Aquavella v. Richardson, 437 F.2d 397 (2d Cir. 1971); *see also* Kingsbrook Jewish Medical Center v. Richardson, 486 F.2d 663 (2d Cir. 1973). Having decided that jurisdiction is proper because a federal question is involved and the amount in controversy exceeds $10,000, there is no need to consider ju-

risdiction further. Before considering the exhaustion issue, however, a closer inquiry may well be made of the substantive issues raised in the complaint.

 In essence, plaintiffs seek to have this court apply Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), and its progeny to the suspension of benefits under Medicare. In *Goldberg,* the Supreme Court held that dictates of procedural due process required a pre-termination evidentiary hearing before welfare benefits could be suspended. Since *Goldberg,* a varying degree of rights embodied within the concept of due process has been extended to other areas in which the government interacts with the individual. *See, e. g.,* Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) (prejudgment replevin); Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (parole revocation); Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) (revocation of probation); and, most recently, Goss v. Lopez, 419 U.S. 565, 95 S.Ct. 729, 42 L. Ed.2d 725, (1975) (suspension of pupil from school). The common thread running through these cases is a delicate balancing test between the private interest affected by the government action and the government interest in a summary adjudication affecting the private interest. In *Goldberg,* the interest of the welfare recipients in maintaining their benefits, which for some constituted the sole source of life's necessities, outweighed the government's interest in protecting its fiscal and administrative resources in relatively slight degree through summary termination of benefits. Contrast that decision with Cafeteria & Rest. Workers Union v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L. Ed.2d 1230 (1961), in which the government's interest in maintaining security at a defense establishment through summary exclusion of a civilian employed by a government subcontractor outweighed the interest of the employee to work at that installation. The interests to be balanced here are the government's desire to maintain the fiscal integrity of the Medicare program versus the provider's right to fair compensation for its services. These interests must be weighed, however, in light of the paramount public policy of providing competent medical care to the aged.

In Coral Gables Convalescent Home, Inc. v. Richardson, 340 F.Supp. 646 (S. D.Fla.1972), presenting a situation similar to the matter at bar, the court held that the failure to provide at least a post-determination hearing constituted a denial of due process. After that decision, the Secretary promulgated new regulations establishing a hearing procedure for reasonable cost determination disputes. 20 C.F.R. 405.490 et seq., 37 F.R. 10724, May 27, 1972. These procedures, in turn, were severely criticized in St. Jude Manor Nursing Home, Inc. v. Richardson, Civil No. 72–686 (M.D. Fla. Oct. 3, 1972) as " . . . not designed to afford a meaningful administrative determination of provider payment disputes." (Id. at 4.) Thereafter, the Act itself was amended to include an entirely new review mechanism for resolving provider-fiscal intermediary disputes: The Provider Reimbursement Review Board, 42 U.S.C. § 1395oo. Unfortunately, for present purposes, this new review mechanism is applicable only for cost accounting periods after June 30, 1973. *See* Section 243(c) of Pub.L. 92–603 and 1972 U.S.Code Cong. and Adm.News p. 4989 et seq. Section 1395oo was itself amended by Pub.L. 93–484, 88 Stat. 1459, Oct. 26, 1974, which expanded the scope of judicial review of Provider Reimbursement Review Board Determinations.

The metamorphosis which the Medicare Act has undergone clearly underscores a congressional intent to see that Medicare review procedures comply with contemporary notions of due process. To view the statutory and administrative scheme perhaps technically applicable to the accounting periods in question, without any consideration of subse-

quent legislative history, would seem to disregard and possibly disrupt the overall purpose of Medicare.

The Supreme Court, on at least two occasions, has had the opportunity to extend the due process analysis in *Goldberg* to the Social Security Act. In Richardson v. Wright, 405 U.S. 208, 92 S.Ct. 788, 31 L.Ed.2d 151 (1972), a due process challenge to the suspension of disability benefits was avoided because the Secretary had adopted new regulations regarding suspension while the suit was pending. The Court deferred judicial action and remanded the case to the Secretary because "(i)n the context of a comprehensive complex administrative program, the administrative process must have a reasonable opportunity to evolve procedures to meet needs as they arise." 405 U.S. at 209, 92 S.Ct. at 789. Similarly in Fusari v. Steinberg, 419 U.S. 379, 95 S.Ct. 533, 42 L.Ed.2d 521 (1975), a challenge to Connecticut's "seated interview" procedures for assessing continuing eligibility for unemployment compensation benefits was avoided by the remanding of the case for reconsideration in the light of intervening changes in Connecticut state law.

This court is now presented with a like opportunity to avoid premature adjudication of the Constitutional issue by relying upon the doctrine of exhaustion of administrative remedies. The well known doctrine that administrative remedies should be fully pursued prior to judicial review of any agency action is both sound and applicable here. *See* Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50–51, 58 S.Ct. 459, 82 L. Ed. 638 (1938). Administrative appeal provides an added opportunity for plaintiff's claims to be vindicated, thereby mooting the controversy. Moreover, the statutory provision for a system of review provides at least some evidence of congressional intent to achieve uniformity of decision, to encourage development of agency expertise, to leave a wide berth for the exercise of agency discretion, and to prevent disruption of the administrative process. *See* McKart v. United States, 395 U.S. 185 at 193–195, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969).

On March 4, 1974, the Secretary published in the Federal Register, 39 F.R. 8166, a notice of proposed rule making, with proposed amendments to Subparts D and R of Regulations No. 5, 20 C.F.R. Part 405. Interested persons were given 30 days in which to submit written comments or suggestions thereon. As a result of suggestions tendered, §§ 405.1809 and 405.1811 were modified, in the words of the Commissioner of Social Security, "to show that the provider has the right to an intermediary hearing where the disputed determination involves a cost-reporting period ending *prior to June 30, 1973,* and the amount in controversy is $1,000 or more." 39 F.R. 34514, Sept. 26, 1974 (emphasis added). Since the accounting periods in dispute were prior to June 30, 1973, and the amount in controversy exceeds $1,000, review in this case may be obtained administratively pursuant to 20 C.F.R. §§ 405.1801 et seq. (effective Oct. 26, 1974). A contrary interpretation of these regulations, denying plaintiffs a right to administrative review, would only require this court to resolve the due process issue. The defendants have put forth no compelling reasons whatsoever for denying plaintiffs some sort of appropriate administrative hearing on the cost disputes. Moreover, the extention of administrative review for accounting periods ending prior to June 30, 1973, imposes no undue burden on the intermediaries, since review is afforded as a matter of right for periods after June 30, 1973.

Accordingly, it is ordered that plaintiffs are directed to exhaust their available administrative remedies under existing regulations.

It is further ordered that defendants provide plaintiffs promptly with a full and fair administrative hearing pursuant to 20 C.F.R. Part 405.

It is further ordered that jurisdiction is retained in this court pending the resolution of said hearing; and that, in the absence of voluntary dismissal of this suit upon resolution of the dispute prior thereto, plaintiffs and defendants both file herein a report on status by May 15, 1975.

It is further ordered that both the preliminary injunction issued on June 27, 1974, and the security previously furnished shall continue and be maintained in effect until further order of this court.