RENTAL HOUSING ASSOCIATION OF
GREATER LYNN, INC.,
Plaintiff, Appellant,

v.

Carla A. HILLS et al., Defendants,
Appellees.

No. 76–1388.

United States Court of Appeals,
First Circuit.

Argued Nov. 1, 1976.

Decided Jan. 26, 1977.

George E. Richardson, Boston, Mass., with whom Johnson, Clapp, Stone & Jones, Boston, Mass., was on brief, for appellant.

Lenore C. Garon, Atty., Civ. Div., Dept. of Justice, with whom Rex E. Lee, Asst. Atty. Gen., Washington, D. C., James N. Gabriel, U. S. Atty., Boston, Mass., Leonard Schaitman, Atty., Civ. Div., Dept. of Justice, Washington, D. C., on brief for Carla A. Hills, appellee.

John G. Carberry, Boston, Mass., with whom Csaplar & Bok, Boston, Mass., was on brief, for Massachusetts Housing Finance Agency, appellee.

Gerard F. Doherty, Boston, Mass., and Roger Dowd, Framingham, Mass., on brief for King's Towers Associates, appellees.

Before COFFIN, Chief Judge, CAMPBELL, Circuit Judge, and GIGNOUX,* District Judge.

GIGNOUX, District Judge.

Plaintiff-Appellant, Rental Housing Association of Greater Lynn, Inc., is an organization of landlords who own or manage approximately 7,000 of the 18,000 existing apartments in Lynn, Massachusetts. In

* Of the District of Maine, sitting by designation.

this suit plaintiff seeks to challenge the action of the Department of Housing and Urban Development (HUD) in awarding financial assistance under Section 8 of the Housing and Community Development Act of 1974, 42 U.S.C. § 1437f (Supp.1975), to the "Hoague-Sprague" project for the conversion of a factory building into low-income housing for the elderly.[1] Rental Housing Association contends that HUD should not have approved the project because there is a sufficient supply of existing housing for low-income families, see 24 C.F.R. § 883.304(b) (1976), and because the project is inconsistent with the city of Lynn's housing assistance plan, see 42 U.S.C. § 1439(a) (Supp.1975). The district court granted a motion to dismiss on the grounds that plaintiff lacks standing and plaintiff appeals.

Under the Section 8 program HUD provides funds to local Public Housing Authorities which in turn make the funds available for rent subsidies to low-income families. Subsidies are available for three types of housing: new construction, substantial rehabilitation, and existing housing. In the new construction and substantial rehabilitation plans the developer applies for subsidies for some or all of the units in the project which are to be rented to eligible families. The existing housing plan differs in that the low-income families apply for subsidies. If they are found eligible they find appropriate housing on their own, which might be their present apartment, and if the unit they choose meets certain standards a rent subsidy is provided.

■ In order for a litigant to have standing to challenge administrative action he must meet two basic tests: the challenged action must cause him "injury in fact," and "the interest sought to be protected by the complainant [must be] arguably within the zone of interests to be protected or regulat-

ed by the statute . . . in question."[2] *Association of Data Processing Organizations, Inc. v. Camp*, 397 U.S. 150, 152–53, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970). To satisfy the first test plaintiff alleges two types of harm: that the award of Section 8 funds to the Hoague-Sprague substantial rehabilitation project will reduce the amount of funds available in the future for existing housing subsidies, and that Rental Housing Association's members will lose tenants to the new project and thereby suffer competitive harm. To satisfy the second test plaintiff points to the statute itself, the implementing regulation, and various references in the legislative history of Section 8 to the effect that existing housing ought to be fully utilized before new units are constructed and that rental subsidies are needed to provide existing housing landlords with sufficient revenue to keep their properties in good repair.

■ If plaintiff alleged only that Hoague-Sprague subsidy would reduce the funds available for existing housing we might have difficulty finding a sufficient allegation of injury resulting from the questioned administrative action in light of recent cases such as *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976). We need not reach that question, however, since we think the allegation of competitive injury sufficient. While the Hoague-Sprague project is not yet completed, and hence specific proof of competitive injury is not possible, it could hardly be thought that administrative action likely to cause harm cannot be challenged until it is too late. *See, e. g., United States v. SCRAP*, 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973). We see no insurmountable obstacles to proof of the likelihood that Rental Housing Association's members will loose tenants to the Hoague-Sprague project.

---

**1.** The Massachusetts Housing Finance Agency, the state agency through which the funds were channeled, and the developers of the project are also named as defendants.

**2.** It is not seriously disputed that if the members of the association would have standing, the association may prosecute the suit as their representative. *Warth v. Seldin*, 422 U.S. 490, 511, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Sierra Club v. Morton*, 405 U.S. 727, 739, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972).

Defendants have cited, and we have found, no authority for the proposition that competitive harm is an insufficient allegation of injury in fact. Quite the contrary, the cases finding allegations of competitive injury sufficient are legion. Injury in fact has been found where governmental agencies permitted otherwise unlawful competition, *Data Processing, supra; Arnold Tours, Inc. v. Camp,* 400 U.S. 45, 91 S.Ct. 158, 27 L.Ed.2d 179 (1970); *Investment Company Institute v. Camp,* 401 U.S. 617, 91 S.Ct. 1091, 28 L.Ed.2d 367 (1971), engaged in activities which compete with the plaintiff's business, *Hardin v. Kentucky Utilities Co.,* 390 U.S. 1, 88 S.Ct. 651, 19 L.Ed.2d 787 (1968); *P. A. M. News Corp. v. Hardin,* 142 U.S.App.D.C. 227, 440 F.2d 255 (1971), awarded government contracts to a competitor, *Constructores Civiles de Centroamerica v. Hannah,* 148 U.S.App.D.C. 159, 459 F.2d 1183 (1972), or entered into a beneficial relationship with a competitor which enhanced its competitive position vis-a-vis the plaintiff on nongovernmental business, *Ray Baillie Trash Hauling, Inc. v. Kleppe,* 477 F.2d 696 (5th Cir. 1973) (alternate holding), *cert. denied,* 415 U.S. 914, 94 S.Ct. 1410, 39 L.Ed.2d 468 (1974).

■ Defendants urge that the Hoague-Sprague project, with 183 units of housing for the elderly, will be too small to have any substantial competitive impact. It is well-settled, however, that the injury required for standing need not be substantial, it need only exist. *United States v. SCRAP, supra* 412 U.S. at 689 n. 14, 93 S.Ct. 2405.[3] Moreover, we note that none of the competitive injury cases cited above required that, or even inquired whether, the competitive impact of the challenged action would be substantial. Finally, it is clear that plaintiff has met the requirement that the alleged injury "fairly can be traced to the challenged action," *Simon v. Eastern Kentucky Welfare Rights Organization, supra* at 41, 96 S.Ct. at 1926, or, phrased in the converse,

that the injury "is likely to be redressed by a favorable decision," *id.* at 38, 96 S.Ct. at 1924. If the Hoague-Sprague project is not undertaken it cannot draw tenants away from Rental Housing Association's members.

We believe that the "zone of interests" test is also satisfied. Clearly the Section 8 program is intended, among other things, to make use of existing housing in providing low-income housing. *See, e. g.,* 42 U.S.C. § 1441a(b), (c) (1975 Supp.); 24 C.F.R. § 883.304(b). Moreover, the legislative history lends support to plaintiff's contention that utilization of existing housing is to be given priority—new construction or substantial rehabilitation is authorized if it "has [been] determined that there is not, and is not likely soon to be, an adequate supply of decent, safe, and sanitary existing housing for low-income families. . . ." S.Rep.No.93-693, 93d Cong., 2d Sess. (1974), 1974 U.S.Code Cong. & Admin.News at 4392. Thus the interest in the utilization of existing housing—and hence the interest in being free of competition which might draw tenants away from existing housing—falls within the "zone of interests," and we believe that the landlord association is an appropriate representative of that interest. Defendants contend that the statute is intended to benefit tenants, not landlords. It is of no consequence however that the plaintiff is an intended, though not the primary, beneficiary, *Hahn v. Gottlieb,* 430 F.2d 1243, 1246 n. 3 (1st Cir. 1970); *Constructores Civiles de Centroamerica v. Hannah, supra* at 1189; *Peoples v. United States Department of Agriculture,* 138 U.S. App.D.C. 291, 427 F.2d 561, 564 (1970), and the legislative history does indicate that Congress recognized that unless landlords receive sufficient rental income they will not be able to properly maintain their buildings, S.Rep.No.93-693, 93d Cong., 2d Sess. (1974) (additional views of Senator Taft),

---

**3.** *SCRAP's* extraordinarily lenient attitude toward the requisite chain of causation between the agency action and the injury may not have survived more recent decisions such as *Warth v. Seldin, supra* n. 2, and *Simon v. Eastern*

*Kentucky Welfare Rights Organization, supra,* but we see no indication that its teaching regarding the magnitude of injury required has been eroded.

1974 U.S.Code Cong. & Admin.News at 4441.

We conclude that the allegations of the complaint are sufficient to withstand a motion to dismiss under Fed.R.Civ.P. 12(b)(6) for lack of standing. Our opinion does not relieve plaintiff from the necessity of establishing in the record facts sufficient to confirm standing along the lines indicated, nor does it deny defendants the right to introduce contrary evidence. We, of course, express no views on the merits.

*Reversed and remanded for further proceedings consistent with this opinion.*