PACEMAKER MONITOR
CORPORATION,
Plaintiff,

v.

UNITED STATES GOVERNMENT, the Department of Health, Education & Welfare, and Group Health, Inc., Defendants.

No. 77–807–Civ–JLK.

United States District Court,
S. D. Florida.

Oct. 26, 1977.

Haiman Long Clein, North Miami, Fla., for plaintiff.

William R. Northcutt, Asst. U. S. Atty., Miami, Fla., Carl H. Harper, Dept. of Health, Education & Welfare, Atlanta, Ga., for defendants.

## ORDER DENYING MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

JAMES LAWRENCE KING, District Judge.

This cause came on for consideration upon the motion of defendant to dismiss for lack of subject matter jurisdiction. The court, having considered the record and being fully advised in the premises, finds and concludes that the motion should be denied.

Defendant, the Department of Health, Education & Welfare (hereafter HEW), contends that plaintiff's claim is not reviewable by this court. Plaintiff seeks judicial review of a determination made by HEW and defendant Group Health, Inc. pursuant to subchapter XVIII of Title 42 of the United States Code—more commonly known as the Medicare Act.

The background of this claim is as follows. Plaintiff is a supplier of durable medical equipment. More specifically, it is presently engaged in the production of pacemaker monitoring equipment. In conjunction with this product, it applied to the defendants for the establishment of an allowable rate for its product, pursuant to the provisions of the Medicare Act. An allowable charge was established by defendants. Plaintiff claims that the rate established is too low to permit production of the pacemaker equipment.

Upon receipt of the letter which established the rate in question, plaintiff allegedly protested to defendants. Plaintiff argued to defendants that their rate was not "equitable, economical and feasible," as required by 42 U.S.C. § 1395$l$(f)(2). Further, plaintiff now alleges that defendants informed it that they had used a "rule of thumb" in reaching their determination of the allowable charge at issue.

Subsequent to plaintiff's protest to defendants, it sought review of the challenged rate determination within the administrative structure. It alleges that its efforts were rewarded by a "single in-house review . . . in which plaintiff was not allowed to participate, present evidence, or in any way contest the established figures." Unable to secure any further review under the Medicare Act, plaintiff now contends that it has exhausted its administrative remedies.

Defendant does not contest these allegations.

The issues presented on this motion to dismiss are quite novel within the context of the Medicare Act. Determination of these issues is rendered more complex by recent action of the Supreme Court in a closely related area. As a result, this court finds it necessary to undertake a detailed analysis of the matters before it.

There are essentially two questions before the court. First, does this court have

subject matter jurisdiction over the claim presented by plaintiff? Second, does plaintiff have standing to assert that claim in this court? In order to answer these questions, this court will carefully scrutinize the recent developments in the law, as outlined below.

## I. Jurisdiction Over the Claim:

### A. Background:

Judicial review of an administrative decision rendered pursuant to the Medicare Act proceeds by way of a somewhat convoluted process. 42 U.S.C. § 1395ii states, *inter alia*, that the provisions of subsection (h) of 42 U.S.C. § 405 are applicable to the Medicare Act as well. 42 U.S.C. § 405(h) (hereafter 405(h)) is a Social Security Act provision concerning the finality of the Secretary's decisions. It states that,

> The findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency *except as herein provided.* (emphasis added).

The Social Security Act contains a section which fits within the italicized proviso above. That section, 42 U.S.C. § 405(g), provides that a party to a hearing can seek judicial review of a final decision made by the Secretary if such party seeks review within sixty days. 405(g) thus provides a means by which a dissatisfied party can pursue judicial review. The problem, for present purposes, is that 42 U.S.C. § 1395ii makes 405(h) applicable to the Medicare Act but neither it, nor any other provision, establishes a provision comparable to 405(g) within the framework of the Medicare Program.

In understanding the scope of 405(h) within the Medicare Act, this court seeks guidance from two recent and crucial Supreme Court opinions relating to the scope of 405(h) within the Social Security Act— *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975) and *Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).

### B. Weinberger v. Salfi:

*Salfi* was a class action contesting the constitutionality of those Social Security Act provisions which prohibited a wage earner's widow or stepchild from receiving insurance benefits unless their relationship to the deceased wage earner was established at least nine months prior to his death. As a preliminary matter, the Supreme Court noted that no claim could be asserted against HEW as to actions arising under the Social Security Act unless some provision in the Act provided otherwise. This finding was based on 405(h).

The Court further noted that 405(h) was applicable to the plaintiff, and therefore barred review unless plaintiff could assert jurisdiction on the basis of another provision in the Act, despite plaintiff's contention that his claim was premised on the Constitution. The rationale underlying this finding was as follows. Although constitutional arguments were crucial to plaintiff's complaint, his standing and the substantive basis for his assertions were derived from the Social Security Act itself. Therefore, the Court stated that plaintiff's claim was more substantially derived from the Social Security Act than from the Constitution.

Yet of equal importance to the court's conclusion was its recognition that 405(g) provided plaintiff, in *Salfi,* with a means by which he could secure judicial review of his claim. This factor was critical in the Court's decision to invoke 405(h) as a jurisdictional bar, despite the clear constitutional overtones of plaintiff's claim. In *Johnson v. Robison,* 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974), the Court had decided against invoking 405(h) as a bar because the claim, in that case, had arisen under the Veterans Administration Act. This Act, unlike the Social Security Act, did not include a section comparable to 405(g). Thus, if 405(h) was invoked, plaintiff in *Johnson* could not have secured review of his claim. Therefore, since plaintiff's claim was infused with constitutional overtones, the Court was unwilling to apply the ordinarily

applicable 405(h) therein. In *Salfi*, the Supreme Court explained this result:

> not only would such a restriction have been extraordinary, such that 'clear and convincing evidence' would be required before we would ascribe such intent to Congress, but it would have raised a serious constitutional question of the validity of the statute as so construed.

*Salfi*, supra, 422 U.S. at 762, 95 S.Ct. at 2465.

In *Salfi*, plaintiff had not been faced with such procedural obstacles. This was a Social Security Act case. 405(g) was available to plaintiff. Therefore, the Court's decision to invoke 405(h) as a potential jurisdictional bar did not deprive plaintiff of an opportunity for judicial review. Rather, it only required plaintiff to comply with the procedures set forth in 405(g). Unfortunately, the class of plaintiffs had not complied with all of 405(g)'s requirements. Despite this failure, however, the Court permitted the named plaintiffs to continue their suit because it found that the sixty day time requirement for filing an appeal along with the requirement that the Secretary's decision be reached on the basis of a hearing were waivable. The only non-waivable requirement was that the plaintiff had to have filed an application with the Secretary before seeking judicial review under 405(g). Because this had been done by the named plaintiffs only, the Court permitted them alone to continue the suit.

This court garners the following guidance from *Salfi*. First, a court should not review a determination of the Secretary made pursuant to the Social Security Act when the complainant has not proceeded in accordance with the provisions of 405(g)—unless the Government has waived those requirements which are deemed waivable. Second, as to a Title 42 program other than the Social Security Act to which 405(h) is applicable but as to which there is no provision comparable to 405(g), judicial review of claims premised upon constitutional grounds will not be denied pursuant to 405(h).

Almost two years after *Salfi*, the Supreme Court decided *Califano v. Sanders* —a case which more firmly established the principles delineated in *Salfi* and recited above.

## C. *Califano v. Sanders:*

In *Sanders*, plaintiff first pursued his claim for disability benefits via the established administrative framework. This terminated in an unfavorable determination by the agency. Instead of filing within the sixty days provided by 405(g), plaintiff waited several years. At that time, he refiled his claim with the same agency, requesting it to reopen his prior application. The agency denied this request too. Then, when plaintiff sought to file for judicial review of this latter determination, defendants raised the issue of subject matter jurisdiction. Plaintiff predicated jurisdiction atop § 10 of the Administrative Procedure Act (hereafter APA). Defendants requested the Court to invoke 405(h) as a bar to review.

The Seventh Circuit Court of Appeals accepted APA § 10 as an adequate jurisdictional base. The Supreme Court did not. While plaintiff, in the case *sub judice,* does not raise § 10 as a basis for jurisdiction, the route by which the Supreme Court reached its decision regarding that section in *Sanders* is especially germane to the issues now before this court.

The *Sanders* Court began its discussion by stating that the jurisdictional role of APA § 10 had been unclear in the past. The role was better defined, however, when Congress amended 28 U.S.C. § 1331(a) in 1976 and thereby eliminated the jurisdictional amount requirement from federal question jurisdiction. This action, the Court reasoned, expanded federal jurisdiction over actions arising as challenges to administrative actions. At the same time, the Court emphasized that while Congress was making this change, it chose to retain 405(h) of the Social Security Act. The contours of federal question jurisdiction were thus provided by § 1331(a), as amended, in combination with 405(h). The Court concluded that APA § 10 did not constitute an independent grant of jurisdiction by Congress.

The relevance of this determination relating to § 10 in *Sanders* was that plaintiff was thereby precluded from seeking judicial review. Once APA § 10 was eliminated as a viable jurisdictional base, the only other ground which plaintiff argued as a basis for jurisdiction was 405(g). However, he had not satisfied the requirements of 405(g), the Court explained, since 405(g) could only be invoked after a final decision by the Secretary had been made after a hearing—and the Court was unwilling to construe plaintiff's request to reopen his prior claim as a sufficient action in that regard. The Court reasoned that unless 405(g)'s requirements were enforced, Congress' policy to forestall belated or repetitive litigation involving stale claims would be frustrated. But, such a holding meant that the Supreme Court had to explain why it had excused plaintiff's failure to comply with 405(g)'s requirements in *Salfi* but was unwilling to do so here.

The Court explained that plaintiff, in *Sanders*, unlike plaintiff in *Salfi* was not asserting a claim of constitutional dimensions. Instead, plaintiff was only seeking another opportunity to establish that he satisfied the disability eligibility standards. This, according to the Court, did not rise to the level of plaintiff's Fourteenth Amendment claim in *Salfi*.

Thus, the difference between the two cases was the difference in the nature of plaintiffs' claims. Whether the claim was constitutional or not was important because

> constitutional questions obviously are unsuited to resolution in administrative hearing procedures and, therefore, access to the courts is essential to the decision of such questions. . . . Since federal question jurisdiction under 28 U.S.C. § 1331 is precluded by [405(h)], a decision denying [405(g)] jurisdiction in *Salfi* . . . would effectively have closed the federal forum to the adjudication of colorable constitutional claims. Thus, [that] case merely adhered to the well-established principle that when constitutional questions are in issue, the availability of judicial review is presumed and *we will not*

> *read a statutory scheme to take the 'extraordinary' step of foreclosing jurisdiction unless Congress' intent to do so is manifested by 'clear and convincing' evidence.*

*Sanders,* supra, 430 U.S. at 109, 97 S.Ct. at 986. (emphasis added).

*Salfi* and *Sanders* provide a construction of § 405(h) that shelters it from constitutional attack. Their combination alerts potential plaintiffs to the fact that review of claims arising under a Title 42 program to which 405(h) is applicable will not be automatically barred unless Congress has given a clear indication to the contrary. If the respective program contains a 405(g)-like provision, plaintiff must pursue his claim, constitutional or not, under its procedures. However, as indicated earlier, this is not the context in which review is sought under the Medicare Act. There is no provision comparable to 405(g) in that Act's provisions.

The significance of this fact becomes more apparent after a consideration of *Dr. John T. MacDonald Foundation, Inc. v. Mathews,* 554 F.2d 714 (5th Cir. 1977). This opinion emphasizes that Congress has not clearly indicated that 405(h) was intended to bar judicial review under the Medicare program and clear and convincing evidence of such an intent is a prerequisite according to the Supreme Court in *Sanders.*

### D. MacDonald v. Mathews:

*MacDonald* involved a claim for reimbursement allegedly due a provider of services pursuant to the Medicare Act. The Fifth Circuit considered the question of subject matter jurisdiction twice. In its first consideration of the issue, the court ruled that § 10 of the APA provided an independent basis for federal jurisdiction over a claim for declaratory and injunctive relief seeking the reopening and recomputation of a final administrative reimbursement determination. However, the Fifth Circuit reconsidered its initial decision once the Supreme Court issued its ruling in *Califano v. Sanders,* supra.

Significantly, the Fifth Circuit began its reconsideration by noting that *Salfi* and

*Sanders* were *not* dispositive of the jurisdictional issue in the *Medicare* context. The court reasoned as follows:

> when the Congress confected the Medicare Act review provisions, it picked up the Social Security Act review-preclusion provision, 42 U.S.C. § 405(h). . . . It omitted, however, to incorporate 42 U.S.C. § 405(g), the section which '[t]herein provided' statutory review.

*MacDonald,* supra, at 716.

The Fifth Circuit indicated that absent a clear and convincing demonstration of Congressional intent, it would not read § 405(h) to preclude judicial review in the Medicare context. *Salfi,* the court noted, did not stand for the proposition that § 405(g) was the exclusive jurisdictional basis for review in the Title 42 context. Rather, *Salfi* only mandated that plaintiff *follow* § 405(g) when § 405(g) was applicable to the Title 42 program at issue. The Fifth Circuit, distinguishing the issue before it from the one involved in *Salfi,* borrowed from an Eighth Circuit opinion concerning a Medicare issue in stating that:

> the due process claim has as its primary goal obtaining a constitutionally adequate hearing. . . . [I]mportantly, the Medicare Act does not provide the [plaintiff] an adequate means of obtaining judicial review of its claim. . . . *If 405(h) were read to wholly preclude adjudication of the [plaintiff's] due process claim, it would raise serious constitutional problems which might impair the force and effect of the Medicare Act.*

St. Louis University v. Blue Cross Hospital Service, 537 F.2d 283, 291–292 (8th Cir. 1976), quoted in *MacDonald,* supra, at 717. (emphasis added)

Because § 405(g) is not applicable to the Medicare Act, the Fifth Circuit sought to avoid the unacceptable result of precluding judicial review of all constitutional claims—a result which would have arisen were § 405(h) read literally in the context of the Medicare Act. As the *MacDonald* court stated,

> The words of § 405(h) are 'sweeping and direct'; it cannot be gainsaid that read

literally they preclude *all* review. . . . [T]he spotty review of Congress' failure to incorporate § 405(g), coupled with § 405(h)'s specific assumption that *some* review has been provided, leaves the mind unsatisfied when confronted with a futile statutory attempt to review the Secretary's refusal to reopen and recalculate the amount of the provider's reimbursement.

*MacDonald,* supra, at 716.

By not reading § 405(h) as an absolute bar to review of claims arising under the Medicare Act, the Fifth Circuit attempted to construe § 1395ii—the section which made 405(h) applicable in the Medicare context—in a manner which would not jeopardize the constitutionality of the Medicare Act itself.

This interpretation of 405(h) is expressly supported by *Americana Nursing Center, Inc. v. Weinberger,* 387 F.Supp. 1116 (S.D.Ill.1975). In this case, twenty-three nursing homes and their parent corporation sued the Secretary of HEW for declaratory and injunctive relief. Plaintiffs argued that HEW's denial of a full administrative hearing to resolve a dispute over reasonable costs under the Medicare program was unlawful. Defendants urged that 405(h), made applicable to the Medicare Act via § 1395ii, precluded judicial review of the agency's determinations regarding reimbursements for nursing care costs and start up costs. The court's response to this latter argument was quite emphatic: "[s]uch a position is untenable." *Americana,* supra, at 1118. It then proceeded to explain its conclusion.

> There exists a presumption of judicial reviewability of federal agency action unless Congress has asserted 'clearly and convincingly' to the contrary. Where agency action is challenged on due process grounds, it is 'immune from judicial review, if ever, only by the plainest manifestation of congressional intent to that effect.' A close examination of the Medicare Act and its amendments reveals no 'clear and convincing' intent of the Congress to preclude judicial review of suspension of payment determinations. *It*

*simply makes no provision. A better reading of Section 405(h) of Title 42 is to understand it applicable only to cases in which review is otherwise provided by the Act.*

*Americana,* supra, at 1118. (Emphasis added)

The case before this court presents a series of arguments which echo those confronting the courts in *MacDonald* and *Americana,* supra. In the case *sub judice,* plaintiff claims that it did not have an opportunity to be heard, orally or in writing, as to the determination of an allowable charge for its pacemaker monitoring equipment. Further, plaintiff claims that it has been informed by defendants that they used a procedure which allegedly does not comport with the defendants' own regulations. Both of these claims are couched in terms of violations of due process.

 In reaching a determination of the motion to dismiss for lack of subject matter jurisdiction presently before this court, the merits of plaintiff's claim need not be reached. The standard, as delineated by *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957), that this court employs is that

in appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

Plaintiff has raised a colorable due process claim. Therefore, this court has subject matter jurisdiction over the claim pursuant to the reasoning of the *Salfi-Sanders-Mac-Donald* triumvirate delineated above. Whether, in fact, plaintiff has a right to a hearing before the agency is a matter that this court need not determine at present.

E. *The Mandamus Power:*

 It should be noted that support for this court's assertion of subject matter jurisdiction over plaintiff's claim can be derived from an alternate source—28 U.S.C. § 1361. This provision provides the courts

with the power to mandamus a United States officer to perform a duty owed to a plaintiff. It is not undercut by the presence of § 405(h). As the Ninth Circuit explained in *Hazelwood Chronic and Convalescent Hospital v. Weinberger,* 543 F.2d 703, 706 n.5 (9th Cir. 1976):

At the time § 405(h) was originally enacted in 1935, [the] sentence [precluding review] referred to all of the general grants of jurisdiction then available to a district court. It has not been amended since, and thus does not include the more recent jurisdictional provisions of the federal mandamus statute, 28 U.S.C. § 1361 . . .. Congress has not amended § 405(h) in the same manner as 28 U.S.C. § 211(a), which now provides for certain decisions of the Veterans' Administrator that 'no other official or any court of the United States shall have power or jurisdiction to review any such decision by an action <u>in the nature of mandamus or otherwise.</u> (underlined language added in 1970).

 Although plaintiff, in the case *sub judice,* did not assert § 1361 as a predicate for this court's jurisdiction, this court is not confined to the assertions of subject matter jurisdiction contained in a complaint. This court may consider appropriate bases for jurisdiction upon its own initiative when facts appropriate for the invocation of such bases are alleged in the complaint. *See Kelly v. West Baton Rouge Parish School Board,* 517 F.2d 194, 197 (5th Cir. 1975); *Mumford v. Glover,* 503 F.2d 878, 882 (5th Cir. 1974); and *Paynes v. Lee,* 377 F.2d 61, 63 (5th Cir. 1967).

 The mandamus jurisdiction of this court is properly invoked when it appears that a federal official may not have complied with the procedures promulgated to govern his conduct. *Ryan v. Shea,* 525 F.2d 268 (10th Cir. 1975). To borrow from the opinion in *Andujar v. Weinberger,* 69 F.R.D. 690, 693–94 (S.D.N.Y.1976):

a violation of a governmental agency's own regulations can be the basis for § 1361 jurisdiction. . . . The language of the SSA [Social Security Act] and the regulations . . . appears to

us to establish that defendant has statutory obligations owing to plaintiffs. Therefore, we conclude that plaintiff has made sufficient showing of statutory duties to permit § 1361 jurisdiction.

Under the Medicare Act, defendants have a statutory obligation to set rates for medical suppliers in an "equitable, economical and *feasible* manner." 42 U.S.C. § 1395*l* (f)(2) (emphasis added). In addition, according to regulations promulgated pursuant to the Medicare Act, carriers—who are responsible for setting the allowable charge for a medical supplier—are to exercise their judgment in a manner which takes account of factual data and *specific factors that may exist in individual cases* in reaching a determination of an "allowable charge". That charge must be *realistic and equitable.* 20 C.F.R. § 405.502(c).

■ This court does not decide whether defendants have met their statutory obligation at the present time. Instead, this court decides only that it has subject matter jurisdiction over the claim presented by plaintiff.

It remains for this court to examine the issue of plaintiff's standing.

## II. *Standing:*

■ The test for standing is two pronged. First, the court must inquire whether plaintiff " 'has alleged such a personal stake in the outcome of the controversy as to warrant *his* invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf.' " *Warth v. Seldin,* 422 U.S. 490, 498–99, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975) (cit. omit.). In other words, the court must determine whether the plaintiff "himself has suffered 'some threatened, or actual injury resulting from the putatively illegal action. . . .' " *Warth,* at 499, 95 S.Ct. at 2205.

Because the standing doctrine embodies both constitutional and prudential limitations upon federal court jurisdiction, the court also must inquire with regard to this latter area. This second question involves "prudential" considerations. Such consider-

ations "apart from Art. III's minimum requirements, serve to limit the role of the courts in resolving disputes." *Warth,* supra, at 500, 95 S.Ct. at 2206. The court must ask

> whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief.

*Warth,* supra, at 500, 95 S.Ct. at 2206.

This court must decide, therefore, whether the plaintiff in the case *sub judice* has suffered an injury in fact and whether plaintiff's claim is arguably within the zone of interests meant to be protected or regulated by the statute or constitutional guarantee in question. *See Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970) and *United States v. Gurney,* 558 F.2d 1202 (5th Cir. 1977).

### A. *Injury in Fact:*

■ Plaintiff alleges that the "allowable rate" which defendants have established for its product under the Medicare Act is so low that it will preclude it from being able to embark on its production. Plaintiff claims that pacemakers are presently in demand by Medicare patients; that present pacemakers are severely defective; and that its electronic pacemaker monitoring device "is a valuable and necessary tool in combatting heart disease, and in fact, was recognized by Defendants [to be such] when they established the charge." Finally, plaintiff alleges that its device has been approved by the Bureau of Medical Devices and Diagnostic Products, a department of the Federal Food & Drug Administration.

As a preliminary matter, it should be noted that,

> for purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.

*Warth,* supra, 422 U.S. at 501, 95 S.Ct. at 2206.

Plaintiff's allegations, taken as a whole, amount to a claim of potential financial injury.

The allegation of a *prospective* loss of business is sufficient to satisfy the requirement of an injury-in-fact. In *Singleton v. Wulff*, 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976), two Missouri licensed physicians challenged the constitutionality of a Missouri statute which excluded non-medically indicated abortions from the list of those things for which Medicaid benefits would be paid. The Supreme Court noted that plaintiffs'

> complaint and affidavit . . . allege that they have performed and will continue to perform operations for which they would be reimbursed under the Medicaid program were it not for the limitation of reimbursable abortions to those that are 'medically indicated.' If the physicians prevail in their suit to remove this limitation, they will benefit, for they will then receive payment for their abortions.

*Singleton*, 428 U.S. at 113, 96 S.Ct. at 2873.

The primary difference between *Singleton* and the present case is that in the former, plaintiffs had performed abortions in the past. They had a "track record", so to speak, in the field of service regarding which they were claiming an injury-in-fact. In the present case, plaintiff claims that there is a clear market for its product. However, it does not appear that it has sold its product to Medicare patients in the past.

This difference between the two cases is not fatal to plaintiff's standing. In *Krueger v. Morton*, 176 U.S.App.D.C. 233, 539 F.2d 235 (1976), an applicant for a coal prospecting permit sued the Secretary of the Interior in an attempt to set aside his order suspending issuance of prospecting permits. The defendant challenged plaintiff's standing, asserting, *inter alia*, that he had not alleged an injury-in-fact. The court responded as follows:

> Appellee has confused lack of an established property interest with lack of standing to question allegedly unjustifiable obstacles to the perfection of such an interest. It is true that applicant ac-

quired no vested interest by the mere filing of his application. But he did have the right to avail himself of the application route in an effort to perfect an interest to the extent that this was not precluded by law or some valid exercise of the agency's discretion. *Were it otherwise, an applicant could be unlawfully deprived of the right to pursue his application to the point of a consummated interest without means for effective complaint.*

*Krueger*, supra, 176 U.S.App.D.C. at 236, 539 F.2d at 238 (emphasis added)

Proof of injury in fact does not require plaintiff to demonstrate that an ongoing course of business is threatened. As the First Circuit has stated, when "specific proof of competitive injury is not possible, it could hardly be thought that administrative action likely to cause harm cannot be challenged until it is too late." *Rental Housing Association of Greater Lynn, Inc. v. Hills*, 548 F.2d 388, 389 (1st Cir. 1977).

Further support for this interpretation of the injury-in-fact requirement is found in the Supreme Court's opinion in *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977). There, a complaint was filed by a nonprofit real estate developer who had contracted to purchase a tract of land on which he intended to build racially integrated housing. Plaintiff developer sought declaratory and injunctive relief against a rezoning denial by the village. The Court treated the injury-in-fact requirement as presenting no obstacle to plaintiff's suit. In so holding, the Court noted that,

> Here there can be little doubt that MHDC [plaintiff] meets the constitutional standing requirements. The challenged action of the petitioners stands as an absolute barrier to constructing the housing MHDC had contracted to place on the Viatoria site. . . . An injunction would not, of course, guarantee that Lincoln Green will be built. MHDC would still have to secure financing, qualify for federal subsidies, and carry through with construction.

*Village of Arlington Heights,* supra, 429 U.S. at 261, 97 S.Ct. at 561.

In the present case, plaintiff alleges that the only barrier between itself and production is the allowable charge set by the defendants in a manner which allegedly contravenes due process. Like the plaintiff in *Arlington Heights,* the present plaintiff will not necessarily be able to produce the product in question nor will it necessarily be able to find Medicare patient-consumers if and when the allowable rate is raised. However, such certainty is not required at this stage of this court's determinations. Some uncertainty is endemic to a suit premised on a rate challenge when the plaintiff is the producer of a new product. If plaintiff could presently produce the pacemaker monitoring equipment at the rate established by the defendants, its contention that the allowable rate was set too low would be severely undercut.

In sum, the injury need not be actual— only *threatened.* Plaintiff has satisfied the first requirement of standing—proof of an injury-in-fact.

B. *Arguably Within the Zone of Interests :*

The second element of standing entails a demonstration by plaintiff that his interest is arguably within the zone of interests protected or regulated by the statute or constitutional guarantee in question. As background to this court's consideration of this issue, it should be noted that this requirement has, of late, been viewed with diminished importance. Justice Brennan, in a separate opinion in *Association of Data Processing,* supra, urged the Supreme Court to abolish it. *Association of Data Processing,* supra, 397 U.S. at 167–175, 90 S.Ct. 827. In addition, Professors Wright and Miller have written that even though "the Court will continue to utilize the zone of protected interest formula . . . its actual application will allow standing to all but the most implausible assertions of interest." Wright, Miller & Cooper, 13 *Federal Practice and Procedure: Civil,* § 3531. As Wright and Miller indicate, the Supreme

Court opinion in *Investment Company Institute v. Camp,* 401 U.S. 617, 91 S.Ct. 1091, 28 L.Ed.2d 367 (1971) lends further support to this viewpoint. In that case, several open-ended investment companies challenged a regulation promulgated by the Comptroller of the Currency authorizing national banks to operate investment funds. The Court held that plaintiffs had standing. In their critique of the decision, Wright and Miller note that

In face of the unchallenged dissenting demonstration that Congress had had no concern with protecting investment companies from bank competition, this opinion is at least open to the interpretation that it has silently dispensed with the zone of protected interests requirement.

Wright, Miller & Cooper, supra, at 3531.

With these considerations in mind, this court now examines the applicability of the zone of interest requirement to the plaintiff herein. Plaintiff has alleged that defendants have violated the dictates of their own statutes and regulations by utilizing "rule-of-thumb" criteria in formulating their allowable charge. Further, plaintiff alleges that, as a matter of due process, it is entitled to be heard on the question of an allowable rate, either orally or in writing. The issue before this court is whether plaintiff is arguably within the zone of interests protected or regulated by the Medicare Act, and its attendant regulations, and/or within the zone of interests meant to be protected or regulated by the Due Process Clause of the Fifth Amendment.

In *Rental Association of Greater Lynn, Inc. v. Hills,* supra, an organization of landlords challenged the action of the Department of Housing and Urban Development awarding financial assistance to a project for the conversion of a factory building into low income housing, pursuant to a federal statute. Defendant contested plaintiffs' standing. The First Circuit decided that standing existed. In reaching its determination that the zone of interest test had been satisfied, the court noted that the statutory provisions in question were part of a statutory program which "intended, among

other things, to make use of existing housing in providing low-income housing." *Rental Association*, supra, at 390. Defendant contended that the statute was intended to benefit tenants—not landlords. However, the court examined the legislative history of the program and found within it a Congressional recognition that landlords would not be able to properly maintain their buildings unless they received sufficient rental income. *Rental Association*, supra, at 390.

Thus, the court concluded that plaintiffs' interest in utilizing existing housing and their interest in being free from efforts to draw tenants away from the existing housing supply were arguably within the zone of interests meant to be protected by the housing statutes in question.

 The parallels to the present case are apparent. Plaintiff, in the case *sub judice*, expects to be a supplier of medical products under the Medicare Act. The Medicare Act is designed ostensibly to help those in need of medical care—just as the Housing Act in *Rental Association* was designed ostensibly for the benefit of tenants. But like the landlord in that case, plaintiff here is an intended beneficiary of the statute in question. He need not be a primary beneficiary in order to have standing. Unless hospitals and the suppliers of medical products are assured of a reasonable rate in compensation for their products and services, those products and services will not be forthcoming. In the end, the primary beneficiary—the patient—will suffer. In discerning the Congressional purpose underlying Medicare reimbursements to providers of services and products, this court finds the following sections of the legislative history of the Social Security Amendments quite helpful:

> The reasonable cost of service ordinarily provided to inpatients by hospitals . . including new services and techniques as they are adopted in the future, would be paid for. . . . Since the reasonable cost of the services would be covered, hospitals *would not be deterred*, because of nonpaying or underpaying patients in

this aged group, *from trying to provide the best of modern care*. The following are the major items and services that would be paid for. . . . *Supplies and appliances* would be paid for . . when they are a necessary part of the covered inpatient hospital services a patient receives.

S.Rep.No.404, 89th Cong. 1st Sess. (1965), 1965 *U.S.Code Cong. & Admin.News*, at pp. 1967–1969. (emphasis added)

While there are no comments in the legislative history made directly in relation to medical suppliers, they implicitly encompassed within the spirit of the comments directed toward hospitals in the above excerpt. The intention of Congress is to provide service and product suppliers with an assurance of reasonable reimbursement so that they will not be dissuaded from providing excellent medical care.

Under Medicare, the supplier is to the patient as the landlord is to the tenant under the Housing Act involved in *Rental Association*, supra. The welfare of the primary beneficiary is inextricably interrelated with the welfare of the provider.

Further support for plaintiff's position is found in *Krueger v. Morton*, a case discussed earlier. As mentioned before, plaintiff, in *Krueger*, was an applicant for a coal prospecting permit. Plaintiff alleged that the Mineral Leasing Act and the Mining and Minerals Policy Act directed the Secretary to "carry out a policy of fostering and encouraging the development of coal resources." *Krueger*, supra, at 238. Plaintiff, though an applicant, was deemed to be arguably within the zone of economic interests protected and regulated by those Acts. In similar fashion, the Fifth Circuit held that an unsuccessful bidder for a government contract was arguably within the zone of interests protected by Department of Defense regulations regarding organizational conflicts of interest. *Hayes International Corporation v. McLucas*, 509 F.2d 247, 256 (5th Cir. 1975). Significantly, the Fifth Circuit noted that earlier cases had found that government procurement statutes were "not intended to be a bestowal of

litigable rights upon those desirous of selling to the Government. . . ." However, the court did not find these cases to be dispositive of the issue of standing. The *Hayes* court did not find them dispositive of the issue of whether a disappointed bidder was within the zone of interests

> arguably protected by a statute or regulation, for even if the plaintiff is unable to assert a violation of a legal right which the court may remedy, 'once review is properly invoked, that person may argue the public interest in support of his claim that the agency has failed to comply with its statutory mandate.'

*Hayes,* supra, at 256.

■ This court finds that the Congressional policy underlying the Medicare Act is to foster the provision of adequate health care for the aged and the needy. Plaintiff is an applicant who seeks to aid Congress in the pursuit of that goal. Further, the suppliers of products and the providers of services are indispensable to the success of the Medicare program. Therefore, plaintiff is arguably within the zone of interests meant to be protected and regulated by the statute in question.

The court notes briefly that plaintiff is also arguably within the zone of interests meant to be protected or regulated by the constitutional guarantee in question. Cases in which courts have found that plaintiffs are within the zone of interests of a constitutional guarantee are legion in number. *See, generally, United States v. Gurney,* 558 F.2d 1202 (5th Cir. 1977) in which plaintiff fell within the ambit of the First Amendment and *Boston Stock Exchange v. State Tax Commission,* 429 U.S. 318, 97 S.Ct. 599, 50 L.Ed.2d 514 (1977) in which plaintiff fell within the ambit of the Commerce Clause, Art. I, § 8, of the Constitution. In the present case, plaintiff contends that it has a right to be heard on the subject of a proper allowable charge. In order to establish that it is *arguably* within the zone of interests meant to be protected by the constitutional guarantee in question, plaintiff need not show that it has a statutory entitlement cognizable under the Due Process Clause.

Rather, it must only show that it has a colorable claim to such an entitlement.

Given the goals of the Medicare Act and the regulations established for determining allowable charges, plaintiff has a colorable claim in this regard.

This court finds that it has subject matter jurisdiction over plaintiff's claim and that plaintiff has standing to sue in the present action. Therefore, it is

ORDERED and ADJUDGED that defendant's motion to dismiss for lack of subject matter jurisdiction be and the same is hereby denied.