The MEDICAL ASSOCIATION OF the STATE OF ALABAMA, and Daniel Gubin, M.D., Plaintiffs,

v.

Richard SCHWEIKER, Secretary of the United States Department of Health and Human Services, individually and in his official capacity, George A. Reich, M.D., Regional Health Administrator of the United States Department of Health and Human Services, individually and in his official capacity, Stephen H. King, M.D., Director of the Division of Health Service Delivery (Region IV), individually and in his official capacity, William B. Lyons, Executive Director (Region IV), individually and in his official capacity, Milton A. Watson, Jr., Public Health Advisor in the Division of Health Services (Region IV), individually and in his official capacity, Ray Overton, Chief of the Alabama/Georgia Section of the Primary Care Branch, Division of Health Services (Region IV), individually and in his official capacity, Denise Rouse, Former Executive Director and/or Public Health Advisor (Region IV), individually and in her former official capacity, Edward N. Brandt, M.D., Ph.D., Assistant Secretary and Director of Public Health Service individually and in his official capacity, Robert Graham, M.D., Acting Administrator of the Health Resources Administration, individually and in his official capacity, Howard V. Stambler, Director of the Division of Health Professions Analysis in the Bureau of Health Professions, individually and in his official capacity, John H. Kelso, Acting Administrator of the Health Services Administration, individually and in his official capacity, Edward Martin, M.D., Director of the Bureau of Community Health Services, individually and in his official capacity, Sandra Lichty, Ph.D., Director of Rural Health Programs (B.C.H.S.), individually and in her official capacity, Robert Schaeffer, Director of the Division of Monitoring and Analysis (B.C.H.S.), individually and in his official capacity, Rufus Wood, Project Director of the West El Health Services, Inc., individually and in his official capacity, West El Health Services, Inc., a private non-profit corporation, partially funded under the Rural Health Initiative Program, and X, Y, and Z being that person, firm or corporation who is responsible for the wrongful conduct or injury described herein whose names and legal descriptions are otherwise unknown but will be supplied by amendment when ascertained, Defendants,

Society for the Advancement of Ambulatory Care, Defendant-Intervenor.

Civ. A. No. 81–276–N.

United States District Court,
M.D. Alabama, N.D.

Jan. 7, 1983.

John T. Mooresmith, Gen. Counsel, The Medical Ass'n of the State of Ala., and Wendell R. Morgan, Montgomery, Ala., for plaintiff Medical Ass'n.

Von G. Memory, Montgomery, Ala., for plaintiff Gubin.

John C. Bell, U.S. Atty., and Susan G. Bevill, Asst. U.S. Atty., M.D.Ala., Montgomery, Ala., for federal defendants.

Joe R. Whatley, Jr., Stewart, Falkenberry & Whatley, Birmingham, Ala., for defendants West El and Rufus Wood.

Jacqueline Leifer and James L. Feldesman, Boasberg, Klores, Feldesman & Tucker, Washington, D.C., for intervening defendant, Soc. for Advancement of Ambulatory Care.

## OPINION

MYRON H. THOMPSON, District Judge.

The plaintiffs Dr. Daniel Gubin and the Medical Association of the State of Alabama have brought this cause of action attacking the federal Rural Health Initiative Program in the State of Alabama. First, they challenge the constitutionality under the first and fifth amendments to the United States Constitution of various provisions of the Public Health Service Act—in particular, 42 U.S.C.A. §§ 254c, 254e, 300e–1, 300l–2—and the regulations promulgated pursuant to these provisions, which provisions authorized the Secretary of the Department of Health and Human Services to establish the Rural Health Initiative Program; and, second, in the alternative, assuming the statutory provisions and regulations are constitutional, they challenge the actions of the defendants in this cause as being violative of the above provisions and section 300m, 42 U.S.C.A., of the same act and the regulations promulgated pursuant

to these statutory provisions, the actions of the defendants as being violative of the first and fifth amendments to the United States Constitution, and the actions of the defendants as being violative of the Sherman Antitrust Act, 15 U.S.C.A. §§ 1, *et seq.*[1]

## I. BACKGROUND

In order to increase the availability of and access to primary health services for residents of medically underserved areas, the Public Health Service Act, 42 U.S.C.A. §§ 201, *et seq.,* was amended in 1975 to authorize the Secretary of Health and Human Services to provide funds, in accordance with certain criteria, to public and private nonprofit entities for the establishment of community health centers in such areas. In carrying out his duties under the act, the Secretary administratively established the Rural Health Initiative Program to meet the needs of medically underserved rural areas, and he established the Urban Health Initiative Program to do the same for urban areas.

The events giving rise to this lawsuit as they appear from the complaint are rather simple. In 1978, West El, a nonprofit private corporation, was funded by the Secretary under the Rural Health Initiative Program as a community health center in Elmore County, Alabama. About the same time, Dr. Daniel Gubin established a medical practice in Elmore County in the same area served by West El. Two years later the Alabama Medical Association, with a membership of over 2000 physicians, and Dr. Gubin, a member of the association, filed this lawsuit alleging that competition from West El and other community health centers established throughout the State of Alabama as a part of the Rural Health Initiative Program was financially hurting the medical practices of Dr. Gubin and other physicians in Alabama and, in some instances, driving physicians out of business.

In their complaint, Dr. Gubin and the association, in addition to challenging the authority of Congress to establish the community health center program in 1975, charged, in so many words, that the Secretary of the Department of Health and Human Services and his subordinates

commenced granting millions of dollars, regardless of need, to public and private non-profit organizations. Grant applications, at an accelerated rate came, from every corner. Few applications, if any, were refused and the efforts of the entire organization [Department of Health and Human Services] were directed almost exclusively toward rapidly and reckless [sic] spending the entire Congressional appropriation. Grant applications were reviewed in a cursory manner and existing grantees were not monitored. In essence, all efforts of the Federal defendants were directed to fueling the "train" with no thought directed to the "track" ahead or behind. And, sure enough, through lack of safeguards and program supervision, substantial and wholesale abuse, fraud and mismanagement became rampant in the program.

Plaintiffs' brief, filed September 4, 1981, p. 3. Dr. Gubin and the association in their complaint further charged that West El was created and funded without the required need, that its application for funding contained materially false and misleading information, and that it has failed and continues to fail to comply with statutory and regulation requirements.

The defendants sued are (i) *the federal defendants:* Richard Schweiker, Secretary of the Department of Health and Human Services; Edward N. Brandt, Assistant Secretary of the Department; George A. Reich, Regional Health Administrator of the Department (Region IV); Stephen H. King, Director of the Division of Health Service Delivery (Region IV); William B. Lyons, Executive Director (Region IV); Ray Overton, Chief of the Alabama/Geor-

---

1. The jurisdiction of the court has been properly invoked pursuant to 28 U.S.C.A. §§ 1331, 1337, 1346 and 15 U.S.C.A. § 15.

gia Section (Region IV); Milton A. Watson, Jr., Public Health Advisor (Region IV); Denise Rouse, former Public Health Advisor and/or Executive Director (Region IV); Robert Graham, Acting Administrator for the Health Resources Administration; Howard V. Stambler, Director of the Division of Health Professions Analysis; John H. Kelso, Acting Administrator of the Health Services Administration; Edward Martin, Director of the Bureau of Community Health Services, Health Services Administration, Public Health Service; Sandra Lichty, Director of Rural Health Programs, Bureau of Community Health Services, Health Services Administration, Public Health Service; and Robert Schaeffer, Director of the Division of Monitoring and Analysis, Bureau of Community Health Services, Health Services Administration, Public Health Service;[2] (ii) *the private defendants:* West El Health Services, Inc. and Rufus Wood, Project Director of West El; (iii) *the defendant-intervenor:* Society for the Advancement of Ambulatory Care, a society composed of community health centers, including Rural Health Initiative Program Projects; and (iv) *various fictitious defendants.*[3]

This cause of action is now before the court on the defendants' motions to dismiss, filed July 8 and 20, August 12, and September 4 and 29, 1981, contending, among other things, (i) that the plaintiffs lack "standing" to pursue their claim that various provisions of the Public Health Service Act and the regulations promulgated pursuant to the provisions are unconstitutional, and further that they lack standing to pursue their claims that the defendants have violated various statutory provisions from the same act and the regulations promulgated pursuant to the provisions and that the defendants have violated the first and fifth amendments; and (ii) that the plaintiffs' antitrust claim, their only remaining claim, fails to state a claim upon which relief can be granted. For reasons which follow, the court is of the opinion that the motions have merit and that, accordingly, this cause of action is due to be dismissed.

## II. STANDING

The court will first consider the issue of standing which is in essence a determination by a court of whether a suing party is entitled to have a court decide the merits of his or her dispute or of particular issues. *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975).

A. Basic Legal Principles of Standing

■ In resolving the issue of standing, a court is bound by a constitutionally imposed jurisdictional restraint found in Article III of the United States Constitution, which limits the "judicial power" of the United States to the resolution of "cases" and "controversies." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 470–71, 102 S.Ct. 752, 757–58, 70 L.Ed.2d 700 (1982). This power, defined by Article III as the authority "to declare the rights of individuals and to measure the authority of governments," is not an unconditional authority, *id.,* but "is legitimate only in the last resort, and as a necessity in the determination of real, earnest and vital controversy," *id.* quoting from *Chicago & Grand Trunk R. Co. v. Wellman,* 143 U.S. 339, 345, 12 S.Ct. 400, 402, 36 L.Ed. 176 (1892). Therefore, courts have viewed the constitutionally imposed restraint found in Article III as requiring that the suing party in order to have standing show that he or she has personally suffered some actual or threatened injury as a result of the putatively illegal conduct of the party sued,

**2.** Although the federal defendants have been sued in both their individual and official capacities, thereby raising a substantial issue as to whether personal jurisdiction has been obtained over these defendants in their individual capacities, the plaintiffs have now indicated that they are pursuing relief against these defendants in their official capacities only.

**3.** Although the federal defendants have challenged the authority of the court to recognize fictitious and unnamed parties as proper parties, *see Fifty Associates v. Prudential Ins. Co. of America,* 446 F.2d 1187, 1191 (9th Cir.1970), in view of the resolution of this cause the issue need not be reached by the court.

*Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99, 99 S.Ct. 1601, 1607–08, 60 L.Ed.2d 66 (1979), that is, the party must show that he or she has suffered an "injury in fact," *Valley Forge Christian College, supra,* 454 U.S. at 473, 102 S.Ct. at 759. This restraint

> serves several of the "implicit policies embodied in Article III," [*Flast v. Cohen,* 392 U.S. 83, 96, 88 S.Ct. 1942, 1950, 20 L.Ed.2d 947 (1968)]. It tends to assure that the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action. The "standing" requirement serves other purposes. Because it assures an actual factual setting in which the litigant asserts a claim of injury in fact, a court may decide the case with some confidence that its decision will not pave the way for lawsuits which have some, but not all, of the facts of the case actually decided by the court.

*Valley Forge Christian College, supra,* 454 U.S. at 472, 102 S.Ct. at 758.

■ However, even if the constitutional requirement of an injury in fact is met, a suing party may still lack standing. The judiciary has adopted over a period of time certain "prudential principles by which the judiciary seeks to avoid deciding questions of broad social import where no individual rights would be vindicated and to limit access to the federal courts to those litigants best suited to assert a particular claim." *Gladstone, Realtors, supra,* 441 U.S. at 99–100, 99 S.Ct. at 1608. For example, a suing party must assert his or her own legal rights and interests and cannot rest his or her claim to relief on the legal rights or interests of others. *Warth, supra,* 422 U.S. at 499, 95 S.Ct. at 2205. Also, the suing party, normally must assert an injury peculiar to himself or herself or to a distinct group of which he or she is a part, rather than one "shared in substantially equal measure by all or a large class of citizens," *Gladstone, Realtors, supra,* 441 U.S. at 100, 99 S.Ct. at 1608, *quoting from Warth, supra,* 422 U.S. at 499, 95 S.Ct. at 2205, feder-

al courts have generally refrained from adjudicating " 'abstract questions of wide public significance' which amount to 'generalized grievances,' pervasively shared and most appropriately addressed in the respective branches," *Valley Forge Christian College, supra,* 454 U.S. at 475, 102 S.Ct. at 760, *quoting from Warth, supra,* 422 U.S. at 499–500, 95 S.Ct. at 2205–06. Finally, the suing party's complaint must fall within the zone of interest to be protected or regulated by the statutory provision or the constitutional guarantee in question; that is, the suing party must fall within the class of persons the constitutional or statutory provision was designed to protect. *Association of Data Processing Service v. Camp,* 397 U.S. 150, 153–55, 90 S.Ct. 827, 830–31, 25 L.Ed.2d 184 (1970); *Barlow v. Collins,* 397 U.S. 157, 164, 90 S.Ct. 832, 836, 25 L.Ed.2d 192 (1970). *See also, Valley Forge Christian College, supra,* 454 U.S. at 475, 102 S.Ct. at 760; *Gladstone, Realtors, supra,* 441 U.S. at 100 n. 6, 99 S.Ct. at 1608 n. 6. Unless these judicially imposed, prudential principles of self-restraint are satisfied in the appropriate circumstances, a party suing will lack standing even though he or she has met the constitutionally imposed requirement of an injury in fact.

### B. As a Private Physician and an Organization Representing Private Physicians

Dr. Gubin and the Alabama Medical Association contend that they have standing, in their respective capacities as a private physician and as an organization representing private physicians, to challenge sections 254c, 254e, 300e–1, and 300*l*–2, and the regulations promulgated pursuant thereto, as being violative of the first and fifth amendments to the United States Constitution or, in the alternative, to challenge the actions of the defendants themselves as being violative of the first and fifth amendments and as being violative of the above statutory provisions and section 300m and the regulations promulgated pursuant thereto. The court disagrees with the two plaintiffs.

■ Since Dr. Gubin has alleged in his complaint that he has suffered economic injury as a result of competition from West El in Elmore County, Alabama, he has met the jurisdictional requirement of Article III that there be an allegation of an injury in fact. It is well established that economic injury fairly traceable to the competition being challenged is sufficient to constitute an injury in fact. *See, e.g., Investment Company Institute v. Camp,* 401 U.S. 617, 620–21, 91 S.Ct. 1091, 1093–94, 28 L.Ed.2d 367 (1971); *Arnold Tours, Inc. v. Camp,* 400 U.S. 45, 91 S.Ct. 158, 27 L.Ed.2d 179 (1970) (per curiam); *Association of Data Processing Service, supra,* 397 U.S. at 152, 90 S.Ct. at 829; *Control Data Corporation v. Baldbridge,* 655 F.2d 283, 289 (D.C.Cir.1981), *cert. denied,* 454 U.S. 881, 102 S.Ct. 363, 70 L.Ed.2d 190 (1981). *See also Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 45 n. 25, 96 S.Ct. 1917, 1927–28 n. 25, 48 L.Ed.2d 450. Similarly, since the Alabama Medical Association has alleged that its members have suffered economic injury as a result of competition from West El and other community health centers established throughout the State of Alabama, the association has also met the jurisdictional requirement that there be an allegation of an injury in fact. *Sierra Club v. Morton,* 405 U.S. 727, 739, 92 S.Ct. 1361, 1368, 31 L.Ed.2d 636 (1972) ("an organization whose members are injured may represent those members.") *See also Warth, supra,* 422 U.S. at 511, 95 S.Ct. at 2211–12; *RITE-Research, etc. v. Costle,* 650 F.2d 1312, 1319–20 (5th Cir.1981). However, both Dr. Gubin and the association have failed to meet the prudentially reasoned and judicially imposed requirement that they come within the zone of interest to be protected or regulated by the statutory provision or the constitutional guarantee in question.

■ The court will consider first the contention of Dr. Gubin and the association, in their respective capacities as a private physician and an organization representing private physicians, that they have standing to claim that sections 254c, 254e, 300e–1 and 300l–2 and the regulations promulgated pursuant to the sections violated the first and fifth amendments to the United States Constitution and to claim alternatively that the defendants violated the two amendments. Focusing then on the first and fifth amendments, this court has been unable to find, and Dr. Gubin and the association have not pointed the court to, any legal authority to support, either explicitly or implicitly, their contention that these two amendments were designed to protect persons from economic competition and the individual injury inherent in competition and their contention that, as a result, they fall within the zone of interest to be protected by these amendments. To the contrary, it appears to be firmly established that a person has no *constitutionally* protected right to be free from economic competition and the individual injury inherent in competition. In *Hardin v. Kentucky Utilities Co.,* 390 U.S. 1, 5–6, 88 S.Ct. 651, 655, 19 L.Ed.2d 787 (1968) (emphasis added), the Supreme Court—after reviewing several prior cases in which the Court concluded that parties challenging the constitutionality of governmentally induced competition lacked standing—observed that "competitive injury provided no basis for standing in the above case simply because the ... *constitutional* requirements that the plaintiff sought to enforce were in no way concerned with protecting against competitive injury." *See, e.g., Tennessee Electric Power Co. v. TVA,* 306 U.S. 118, 59 S.Ct. 366, 83 L.Ed. 543 (1939); *Alabama Power Co. v. Ickes,* 302 U.S. 464, 58 S.Ct. 300, 82 L.Ed. 374 (1938); *Troutman v. Shriver,* 417 F.2d 171, 174 (5th Cir.1969); *Alabama Power Co. v. Alabama Electric Cooperative,* 394 F.2d 672, 674 (5th Cir.1968). It therefore follows that private physicians, such as Dr. Gubin, and organizations representing private physicians, such as the Alabama Medical Association, to the extent that they rely principally on injury from competition similarly lack standing to challenge various provisions of the Public Health Service Act and the regulations promulgated pursuant thereto or, in the alternative, the actions of the defendants under the statutory provisions and the regulations, as being violative of the Consti-

tution, and, in particular, the first and fifth amendments.

■ The court will consider next the contention of Dr. Gubin and the association, in their respective capacities as a private physician and as an organization of private physicians, that they have standing to claim that the defendants violated sections 254c, 254e, 300e–1, 300*l*–2, and 300m and the regulations promulgated pursuant to the sections. Focusing then on these sections, the court is again of the opinion that Dr. Gubin and the association have failed to meet the judicially imposed, prudential requirement of zone of interest—that is, the requirement that they show that they come within the zone of interest to be protected by the statutory provisions in question.

Section 254c, essentially, authorizes the Secretary of the Department of Health and Human Services to "make grants to public and nonprofit private entities for projects to plan and develop community health centers which will serve medically underserved populations;" sections 254e and 300e–1 authorize the Secretary to determine the medical needs of various areas and by his designation render these areas eligible for the establishment of community health centers; section 300*l*–2 provides for a system of administrative review of proposed funding in these areas; and section 300m authorizes the Secretary to assign tasks of coordinating the delivery of medical services and making recommendations on the need for medical services to "state health planning and development agencies" designated by the Secretary. The face of these statutory provisions clearly reflects that they were designed to provide medical assistance to persons living in medically underserved areas; and the zone of interest to be protected by these provisions is the medical welfare of the persons living in these areas. Similarly, the legislative history reflects that this was the design and purpose of these provisions:

The Committee intends that the provision of high quality health services in all American communities be a national objective. No community should be deprived of such services because of inadequate financial resources, its location, or similar factors. These health services should be provided, to as great an extent as possible, independent of Federal financial support. When it is determined, however, that existing public and private health services financing arrangements are inadequate to assure communities quality health care or when it is determined that existing public and private health services delivery capacity is inadequate. Federal assistance should be made available to support the development and provision of these services. Federal assistance in such cases would be provided until other financial arrangements become adequate to permit financial independence. The Committee is concerned, above all, with the needs of American communities for health services and quality health care. In addition, it is intended that the Federal assistance that is provided for the support of the provision of services allow for maximum flexibility in the organization and delivery of health care and be responsive to provider preference and to community need.

Senate Report No. 94–29, 94th Cong., 1st Sess. 119, reprinted in 1975 *U.S.Code Cong. & Ad.News* 469, 581–82. In fact, the only recorded reference to possible competition from private physicians appears to be in the following passage from the legislative history of the 1978 amendments to section 254c:

One of the successful aspects of the community health center program has been the development of these activities as effective and efficient entities *competitive with private providers....* [C]ommunity health centers could, in the event of the passage of some form of national comprehensive financing mechanism provide the needed capacity to help meet increases in demand for services and, in so doing, reduce increases in medical care costs which might result from such increase in demand.

Senate Report No. 95–860, 95th Cong., 2nd Sess. 11, reprinted 1978 *U.S.Code Cong. & Ad.News* 9144. The legislative history of

section 254c demonstrates, if anything, the determination of Congress to establish community health centers where needed irrespective of the competitive impact on private physicians.

■ Therefore, neither a facial review of the statutory provisions in question nor a look at their legislative history reflects a design or purpose to protect private physicians from the individual adverse consequences of competition. As a result, private physicians do not fall within the zone of interest to be protected by these provisions and do not have standing to challenge the manner in which these provisions and the regulations promulgated pursuant thereto are implemented. *See, e.g., Moore v. Tangipahoa Parish School Board,* 625 F.2d 33 (5th Cir.1980); *Troutman v. Shriver, supra,* 417 F.2d at 174–76; *see also Peoples Gas, Light and Coke Company v. United States Postal Service,* 658 F.2d 1182, 1195–99 (7th Cir.1981); *Control Data Corp. v. Baldridge, supra,* 655 F.2d at 289–96; *Tax Analysts and Advocates v. Blumenthal,* 566 F.2d 130, 137–45 (D.C.Cir.1977), *cert. denied,* 434 U.S. 1086, 96 S.Ct. 1280, 55 L.Ed.2d 791 (1978). *Cf. Gladstone, Realtors, supra; Arnold Tours, Inc., supra; Association of Data Processing Service, supra; Kirby v. United States,* 675 F.2d 60, 66–67 (3rd Cir.1982).

## C. As a Taxpayer and an Organization of Taxpayers

Dr. Gubin and the Alabama Medical Association contend also that they have standing, in their respective capacities as a taxpayer and as an organization of taxpayers, to challenge sections 254c, 254e, 300e–1, and 300*l*–2 and the regulations promulgated pursuant thereto as being violative of the first and fifth amendments to the United States Constitution or, in the alternative, to challenge the actions of the defendants themselves as violative of the two constitutional amendments and as being violative of the above statutory provisions and section 300m of the Public Health Service Act and the regulations promulgated pursuant to the sections. Again, the court disagrees with the two plaintiffs.

In the recent case of *Valley Forge Christian College, supra,* the United States Supreme Court again visited the problem of taxpayer standing and summarized as follows the two-part test developed earlier in *Flast v. Cohen,* 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968), to determine whether a suing party has standing as a taxpayer:

> First, because a taxpayer alleges injury only by virtue of his liability for taxes, the Court held that a taxpayer will be a proper party to allege the unconstitutionality only of exercises of congressional power under the taxing and spending clause of Art. I, § 8, of the Constitution. Second, the Court required the taxpayer to show that the challenged enactment exceeds specific constitutional limitations upon the exercise of the taxing and spending power and not simply that the enactment is generally beyond the powers delegated to Congress by Art. I, § 8.

*Valley Forge Christian College, supra,* 454 U.S. at 479, 102 S.Ct. at 762 (citations omitted), *quoting from Flast, supra,* 392 U.S. at 102–03, 88 S.Ct. at 1954. The Court in *Valley Forge Christian College* then added that the plaintiffs in *Flast*—who were seeking to enjoin the expenditure of federal funds under the Elementary and Secondary Education Act of 1965 because the funds were allegedly being used to support religious schools in violation of the Establishment Clause of the first amendment—satisfied this test "because '[t]heir constitutional challenge [was] made to an exercise by Congress of its power under Art. I, § 8, to spend for the general welfare,' and because the Establishment Clause, on which plaintiffs' complaint rested, 'operates as a specific constitutional limitation upon the exercise by Congress of the taxing and spending power conferred by Art. I, § 8.'" *Valley Forge Christian College, supra,* 454 U.S. at 479, 102 S.Ct. at 762 (citations omitted), *quoting from Flast, supra,* 392 U.S. 103–04, 88 S.Ct. at 1954. However, unlike the plaintiffs in *Flast,* Dr. Gubin and the Alabama Medical Association have failed to meet one or both prongs of the test as to each of their claims in question.

■ The court will consider first the contention of Dr. Gubin and the association, in their respective capacities as a taxpayer and an organization of taxpayers, that they have standing to claim that sections 254c, 254e, 300e–1, and 300*l*–2 and the regulations promulgated pursuant to the statutory provisions or, in the alternative, that the actions of the defendants, violated the first and fifth amendments to the United States Constitution. This contention is without merit because Dr. Gubin and the association have failed to meet the second prong of the *Flast* two-part test—that is, they have failed to show that the first and fifth amendments, to the extent they are relying on these amendments, operate as a specific constitutional limitation on the exercise by Congress of the taxing and spending power conferred by Article I, § 8.

It appears that, so far, there is only one recognized restriction on the power of Congress to tax and spend and that restriction is the Establishment Clause in the first amendment. *Everson v. Board of Education,* 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711 (1947). In *Everson* the Court stated that

No tax in any amount, large or small, can be levied to support any religious activities or institutions, whatever they may be called, or whatever form they may adopt to teach or practice religion.

330 U.S. at 16, 67 S.Ct. at 511–12. *See also Flast, supra. See also Valley Forge Christian College, supra,* 454 U.S. at 490, 102 S.Ct. at 768 (Brennan, J., dissenting). Dr. Gubin and the association are not relying on the Establishment Clause, and they have failed to point the court to any other part of the first amendment or any part of the fifth amendment, applicable to their claims, which serves as a restriction of the taxing and spending power of Congress. Furthermore, they have failed to offer any basis, either from the history of the amendments or from case law, for extending the restriction beyond the Establishment Clause. As a result, they lack standing as a taxpayer and as an organization of taxpaying physicians to challenge various provisions of the Public Health Service Act and the regulations promulgated pursuant to the provisions and the actions of the defendants under those provisions and regulations as being violative of the first and fifth amendments. *See, e.g. Korioth v. Briscoe,* 523 F.2d 1271, 1276–77 (5th Cir.1975); *Troutman, supra,* 417 F.2d at 173–74.

■ The court will consider next the contention of Dr. Gubin and the association, in their respective capacities as a taxpayer and an organization of taxpayers, that they have standing to claim that the defendants violated sections 254c, 254e, 300e–1, 300*l*–2 and 300m and the regulations promulgated pursuant thereto. This contention is deficient in at least two respects. First, the basis of this claim is not an exercise of congressional power as required by the *Flast* test, but the decisions and actions of the members of the Department of Health and Human Services and of private individuals acting on behalf of various private entities, such as West El. *See, e.g., Valley Forge Christian College, supra,* 454 U.S. at 479, 102 S.Ct. at 762 (denying standing because "the source of [taxpayer plaintiffs'] complaint is not a congressional action, but a decision of HEW to transfer a parcel of federal property"); *Schlesinger v. Reservists Committee to Stop the War,* 418 U.S. 208, 228, 94 S.Ct. 2925, 2935, 41 L.Ed.2d 706 (1974) (denying standing because the taxpayer plaintiffs "did not challenge an enactment of Art. I, § 8, but rather the action of the Executive Branch"). Second, in this claim Dr. Gubin and the association are not challenging actions as exceeding congressional taxing and spending power, but rather they are simply challenging the administrative actions of the defendants under various statutory provisions and regulations; whereas, *Flast* limited taxpayer standing to challenges to exercise of *taxing and spending* by Congress. *Id.,* 392 U.S. at 102–03, 88 S.Ct. at 1954.

■ Finally, there is an alternative reason for denying standing to the Alabama Medical Association to assert any claim as an organization consisting of taxpayers: the association is not a proper organization to represent its members as taxpayers.

Members of the association joined the association because they were physicians, not because they were taxpayers. Although it is well established that an organization whose members are injured may represent those members in judicial proceedings, *see Sierra Club, supra,* 405 U.S. at 739, 92 S.Ct. at 1368; *Warth, supra,* 422 U.S. at 511, 95 S.Ct. at 2211–12, reason dictates that the organization may do so only when the injury to its members has some reasonable connection with the reasons the members joined the organization and with the objectives of the organization. This is not the case with the Alabama Medical Association to the extent that it is seeking to represent its members simply as taxpayers.

### D. As the State Board of Health

■ It appears from the complaint in this case that the Alabama State Board of Health was initially designated by the Secretary as a state health planning and development agency pursuant to 42 U.S.C.A. § 300m and that subsequently the board was "divested" of its designation. Dr. Gubin and the Alabama Medical Association claim, in general, that the board was stripped of its designation in violation of section 300m. They, relying on the following two premises, contend that they have standing to pursue this claim: first, the State Board of Health would have standing to pursue this claim because it suffered an injury in fact by the divestiture under section 300m and because the board falls within the zone of interest to be protected by section 300m; and, second, the association and the board are one and the same.

At first blush it would appear that the State Board of Health and the Alabama Medical Association are one and the same. Section 22–2–1, Code of Alabama 1975 provides:

The medical association of the state of Alabama, as constituted under the laws now in force or hereafter may be in force, is the state board of health.

However, in *Parke v. Bradley,* 204 Ala. 455, 86 So. 28 (1920), in which the state's appropriation of funds for the board was challenged as being violative of the state constitution by conferring the "sovereign power" on a private corporation, the Alabama Supreme Court explained that

Whether the medical association of the state be regarded as a private, or a public, or a quasi public corporation is, we think, wholly immaterial; for that association, as such, is not invested with any power or authority whatever. On the contrary, recognizing its peculiar aptitude for the important and responsible service required, the state has availed itself of a ready-made organization of professional and practical medical scientists, and has by legislative fiat converted it bodily into a state board of health, and to this public board, not to the state medical association, the Legislature has granted authority and jurisdiction in the premises.

*Id.,* 86 So. at 30. It is apparent from *Parke* that the Alabama Medical Association and Alabama State Board of Health, while consisting of the same membership, are not one and the same; the former is a purely private corporation, whereas the latter is a state agency. Therefore, even assuming that the board would have standing—an assumption about which this court has substantial doubt—there is no legal or factual basis for transferring this standing to the association.

Furthermore, as to Dr. Gubin, again assuming that the board would have standing and further assuming that the board and the association are in fact one and the same, he has failed to indicate how these assumptions taken as true would confer standing on him.

### III. ANTITRUST CLAIM

Dr. Gubin and the Alabama Medical Association claim that the defendants have entered into an agreement in "restraint of trade or commerce" in violation of 15 U.S. C.A. § 1, otherwise known as the Sherman Antitrust Act. The defendants in their motions to dismiss contend that Dr. Gubin and the association have failed to state a cause of action upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). The court agrees with the defendants.

The Sherman Antitrust Act's prohibition on the making of agreements in restraint of trade is not applicable to the federal government and its officials acting in their official capacity. *Sea-Land Service, Inc. v. Alaska Railroad,* 659 F.2d 243 at 245–47 (D.C.Cir.1981), *cert. denied,* 455 U.S. 919, 102 S.Ct. 1274, 71 L.Ed.2d 459 (1982). *Cf. United States v. Cooper Corporation,* 312 U.S. 600, 61 S.Ct. 742, 85 L.Ed. 1071 (1941). Similarly, private parties to the extent they are acting at the direction or with the consent of federal agencies also fall outside the pale of the act's prohibition. *National Gerimedical Hospital and Gerontology Center v. Blue Cross of Kansas City,* 452 U.S. 378, 101 S.Ct. 2415, 69 L.Ed.2d 89 (1981).

For purposes of a motion to dismiss, a federal court is constrained to accept as true the fact allegations contained in the complaint. *Brown v. Ivie,* 661 F.2d 62, 66 (5th Cir. Unit B. 1981), *cert. denied,* 455 U.S. 990, 102 S.Ct. 1614, 71 L.Ed.2d 850 (1982). Therefore, taking the allegations in the complaint filed by Dr. Gubin and the association as true, the court must nevertheless conclude that the complaint must be dismissed. Dr. Gubin and the association have sued federal defendants who because of their capacities as federal officials are not subject to the act's prohibition, *see, e.g., Sea-Land Service, Inc., supra;* and they have sued private defendants who are also not subject to the act's prohibition because from the complaint it appears that the actions of the private parties were wholly at the direction and with the consent of the federal defendants, *see, e.g., United States v. National Association of Securities Dealers,* 422 U.S. 694, 730–34, 95 S.Ct. 2427, 2448–50, 45 L.Ed.2d 486 (1975); *Gordon v. New York Stock Exchange,* 422 U.S. 659, 689–90, 95 S.Ct. 2598, 2614–15, 45 L.Ed.2d 463 (1975). *See also Alabama Power Co. v. Alabama Electric Cooperative, Inc., supra,* 394 F.2d at 675–77.

### IV. CONCLUSION

In conclusion, the court is of the opinion that the defendants' motions to dismiss are due to be granted because (i) the plaintiffs Dr. Gubin and the Alabama Medical Association lack standing to bring their claim that various provisions of the Public Health Service Act and the regulations promulgated pursuant to the provisions are unconstitutional and they lack standing to bring their alternative claims that the defendants have acted unconstitutionally, and that the defendants have violated various provisions of the Public Health Service Act and the regulations promulgated pursuant to the provisions and (ii) the plaintiffs' antitrust claim, their only other claim, fails to state a claim upon which relief can be granted.

An appropriate judgment will be entered in accordance with this opinion.