**BANK STATIONERS ASSOCIATION, INC., et al., Plaintiffs-Appellants,**

v.

**BOARD OF GOVERNORS OF the FEDERAL RESERVE SYSTEM, Defendants-Appellees.**

No. 82–8058.

United States Court of Appeals, Eleventh Circuit.

May 12, 1983.

King & Spalding, Griffin B. Bell, James M. Sibley, James D. Miller, James A. Pardo, Jr., Richard A. Schneider, Atlanta, Ga., for plaintiffs-appellants.

Board of Governors of the Federal Reserve System, James V. Mattingly, Jr., Richard M. Ashton, Washington, D.C., for defendants-appellees.

Before GODBOLD, Chief Judge, KRAVITCH, Circuit Judge, and MORGAN, Senior Circuit Judge.

GODBOLD, Chief Judge:

## I.

Automated clearinghouse (ACH) services transfer money between banks and other institutions by computer, thus eliminating the need for paper checks. Bank Stationers Association,[1] printers of personalized checks, brought suit under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, to enjoin the Federal Reserve Board from charging fees for ACH services that are insufficient to cover the cost of providing such services. They allege that below cost fees violate § 107 of the Monetary Control Act of 1980, 12 U.S.C. § 248a (Supp. IV 1980).[2] The district court dismissed the suit finding that Bank Stationers lacked standing to challenge the Board's action. We affirm.

**1.** Plaintiffs include Bank Stationers Association, Inc., a trade association of companies that print personalized checks, and two members of the Association, Checks, Inc. and John H. Harland Company.

**2.** Section 107 provides:

The Federal Reserve Act is amended by inserting after section 11 the following new section:

"PRICING OF SERVICES

"Sec. 11A. (a) Not later than the first day of the sixth month after the date of enactment of the Monetary Control Act of 1980, the Board shall publish for public comment a set of pricing principles in accordance with this section and a proposed schedule of fees based upon those principles for Federal Reserve bank services to depository institutions, and not later than the first day of the eighteenth month after the date of enactment of the Monetary Control Act of 1980, the Board shall begin to put into effect a schedule of fees for such services which is based on those principles.

"(b) The services which shall be covered by the schedule of fees under subsection (a) are—

"(1) currency and coin services;

"(2) check clearing and collection services;

"(3) wire transfer services;

"(4) automated clearinghouse services;

"(5) settlement services;

"(6) securities safekeeping services;

"(7) Federal Reserve float; and

"(8) any new services which the Federal Reserve System offers, including but not limited to payment services to effectuate the electronic transfer of funds.

## II.

Bank Stationers allege that the Federal Reserve Board's fees for ACH services are less than the cost of providing such services and that the subsidized fees violate the Monetary Control Act and injure their economic interests.

Section 107 of the Act requires the Board to charge fees for its services. The disputed portion of the statute, provides:

Over the long run, fees shall be established on the basis of all direct and indirect costs actually incurred in providing the Federal Reserve services priced, including interest on items credited prior to actual collection, overhead, and an allocation of imputed costs which takes into account the taxes that would have been

"(c) The schedule of fees prescribed pursuant to this section shall be based on the following principles:

"(1) All Federal Reserve bank services covered by the fee schedule shall be priced explicitly.

"(2) All Federal Reserve bank services covered by the fee schedule shall be available to nonmember depository institutions and such services shall be priced at the same fee schedule applicable to member banks, except that nonmembers shall be subject to any other terms, including a requirement of balances sufficient for clearing purposes, that the Board may determine are applicable to member banks.

"(3) Over the long run, fees shall be established on the basis of all direct and indirect costs actually incurred in providing the Federal Reserve services priced, including interest on items credited prior to actual collection, overhead, and an allocation of imputed costs which takes into account the taxes that would have been paid and the return on capital that would have been provided had the services been furnished by a private business firm, except that the pricing principles shall give due regard to competitive factors and the provision of an adequate level of such services nationwide.

"(4) Interest on items credited prior to collection shall be charged at the current rate applicable in the market for Federal funds.

"(d) The Board shall require reductions in the operating budgets of the Federal Reserve banks commensurate with any actual or projected decline in the volume of services to be provided by such banks. The full amount of any savings so realized shall be paid into the United States Treasury."

paid and the return on capital that would have been provided had the services been furnished by a private business firm, except that the pricing principles shall give due regard to competitive factors and the provision of an adequate level of such services nationwide.

12 U.S.C. § 248a(c)(3). Bank Stationers contend that the Act precludes the Board from encouraging the use of ACH services through incentive pricing. The district court found that even if the below cost pricing of ACH services caused palpable injury, Bank Stationers were not arguably within the zone of interests sought to be protected or regulated by § 107 and hence lacked standing.

■ When ruling on a motion to dismiss for want of standing the court must accept as true all material allegations in the complaint and construe the complaint in favor of the complaining party. *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975). We are not concerned with the truthfulness of Bank Stationers' allegations, nor the merits of the underlying claim. Our inquiry focuses solely on whether plaintiffs have standing to maintain this action.

"The term 'standing' subsumes a blend of constitutional requirements and prudential considerations, .... [A]t an irreducible minimum, Art. III requires that the party who invokes the court's authority to 'show that he personally suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant.'" *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 471–472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700, 709 (1982) (quoting *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99, 99 S.Ct. 1601, 1607, 60 L.Ed.2d 66 (1979)) (citations omitted). Beyond the constitutional requirements for standing the federal judiciary has adopted a number of prudential limitations. One such limitation requires that the plaintiff's complaint be "arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 153, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970).[3]

### A. Injury in fact

The injury alleged by Bank Stationers is a reduction in demand for their product (paper checks) caused by the Board's below cost fees for ACH services. Bank Stationers assert that if the Board is required to comply with the Monetary Control Act the ACH fees could not be subsidized and the demand for checks would not be artificially reduced. These allegations sufficiently describe the specific injury to Bank Stationers caused by the Board's actions.

### B. Zone of interests

■ Bank Stationers urge the abandonment of the "zone of interests" test. They insist that under recent Supreme Court precedent a plaintiff has standing if he has suffered concrete and particularized injury that will be redressed by the relief sought. *See Duke Power Co. v. Carolina Environmental Study Group, Inc.,* 438 U.S. 59, 80–81, 98 S.Ct. 2620, 2634, 57 L.Ed.2d 595 (1978). Bank Stationers argue that the Supreme Court's failure to apply the zone test in recent cases indicates implicit abandonment. We cannot agree. The Supreme Court's express reaffirmation of the zone test requires us to assume the test's continued role as a prudential limitation. *See Valley Forge,* 454 U.S. at 474, 102 S.Ct. at 759, 70 L.Ed.2d at 711. Precedent adopted by this circuit also indicates that the test enjoys continued vitality. *Baker v. Bell,* 630 F.2d 1046 (5th Cir.1980); *Suntex Dairy v. Bergland,* 591 F.2d 1063 (5th Cir.1979).[4]

---

**3.** The zone of interests test is commonly applied to actions brought under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* Outside of the APA different standards may apply. *See James v. Home Construction Co.,* 689 F.2d 1357 (11th Cir.1982).

**4.** Fifth Circuit decisions handed down prior to October 1, 1981 are binding as precedent in the Eleventh Circuit. *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981).

Under the zone test a plaintiff does not have standing unless his complaint is arguably within the zone of interests protected or regulated by the relevant statute. The "relevant statute" is the legislation under which the zone of interests is purported to exist. *Baker v. Bell,* 630 F.2d at 1051. All agree in this case that § 107 of the Monetary Control Act is the relevant statute.

The Monetary Control Act seeks to promote competition and to create a more efficient payments mechanism. *See* 126 Cong. Rec.S.3167 (daily ed. March 17, 1980) (Statement of Sen. Proxmire). As printers of checks Bank Stationers provide a component of the nation's primary payments mechanism. They argue that as a sector of the payments mechanism that would be affected by the competition the Act seeks to promote they are within the arguable zone of interests of the Act. The Board contends that the language and legislative history of § 107 evince an intent to provide nonmember financial institutions access to Federal Reserve services and to permit private firms to offer payment clearing mechanisms in competition with the Board. *See id.* The Board maintains that there is no evidence that Congress intended to protect the producers of a component used in a payments mechanism.

■ The resolution of this case depends on our interpretation of the zone of interests test. When applying the zone test a court must discern whether the interest asserted is one Congress arguably intended to protect by the statute under which the suit is brought. The sources pertinent to this examination are the language of the relevant statute and its legislative history. *Control Data Corp. v. Baldrige,* 655 F.2d 283, 293–94 (D.C.Cir.1981). The test is a generous one. The plaintiff's interest need only be *arguably* within the *zone* of protected interests. Nonetheless, the zone test is a limitation on standing intended to ensure the complete adversarial presentation of the issues before the court and the "proper— and properly limited—role of the courts in a democratic society." *Warth,* 422 U.S. at 498, 95 S.Ct. at 2204.

■ An examination of § 107 and its legislative history reveals no indication that Congress intended to protect printers of checks.[5] Section 107 is designed to promote competition in payment clearing services between the Board and private firms. As the district court stated: "There is no evidence ... of any intent ... to protect the producers of a component used in providing a payments mechanism—computers, armored cars, paper, or printed checks."

The absence of affirmative indicia of legislative intent may not be fatal in all cases. Bank Stationers, however, are also several steps removed from the core concern of the statute. Section 107 is intended to encourage competition between the Board and clearinghouse operators. The legislative history reveals that Congress was concerned with the effect of that competition on clearinghouse operators, depository institutions and consumers. H.R.Rep. No. 842, 96th Cong., 2d Sess. 71, *reprinted in* 1980 U.S. Code Cong. & Ad.News 298, 301. Bank

---

**5.** Bank Stationers' reliance on *Pacemaker Monitor Corp. v. U.S.,* 440 F.Supp. 473 (S.D.Fla. 1977), is misplaced. In *Pacemaker* providers of medical supplies were found to be within the zone of interests of the Medicare Act. The court stated:

> While there are no comments in the legislative history made directly in relation to medical suppliers, they [are] implicitly encompassed within the spirit of the comments directed toward hospitals .... The intention of Congress is to provide service and product suppliers with an assurance of reasonable reimbursement so that they will not be dissuaded from providing excellent medical care.

Under Medicare, the supplier is to the patient as the landlord is to the tenant under the Housing Act involved in *Rental [Housing] Association, [of Greater Lynn, Inc. v. Hills,* 548 F.2d 388 (1st Cir.1977)] *supra.* The welfare of the primary beneficiary is inextricably interrelated with the welfare of the provider. *Id.* at 484.

The *Pacemaker* court found the relevant statute was intended to protect the suppliers' interests. In the instant case we are unable to attribute to Congress an intent to protect printers of checks.

Stationers do not provide payment clearing services. They are merely suppliers to customers of clearinghouse operators (e.g. banks) and to bank depositors. Bank Stationers are not only tangential to the competitive concern of the statute; they are tangential at a low level on the hierarchy (they supply nothing to clearinghouse operators directly). Moreover, Bank Stationers' interests are not necessarily consistent with the competitive concerns of the Act.

We hold that Bank Stationers' complaint is not arguably within the zone of interests Congress sought to protect by § 107 of the Monetary Control Act of 1980. The district court correctly dismissed the case for lack of standing.

AFFIRMED.