John DOE and Robert Seawright, Individually and on behalf of all others similarly situated, Plaintiffs,

and

The State of Maryland, and Ruth Massinga, Secretary, Maryland Department of Human Resources, and Charles R. Buck, Jr., Secretary, Maryland Department of Health and Mental Hygiene, Applicants for Intervention,

v.

Margaret M. HECKLER, Secretary, United States Department of Health and Human Services, Defendant.

Civ. A. No. M–83–2218.

United States District Court,
D. Maryland.

Aug. 5, 1983.

Dennis W. Carroll and Ethel Zelenske, Legal Aid Bureau, Inc., Baltimore, Md., for plaintiffs.

Stephen H. Sachs, Atty. Gen. of Maryland, Dennis M. Sweeney, Gen. Counsel and Chief, Civil Division, Nancy B. Shuger and Ellen Callegary, Asst. Attys. Gen., and Marlene Trestman, Staff Attorney, Baltimore, Md., for plaintiffs-intervenors.

J. Frederick Motz, U.S. Atty. for the District of Maryland, Glenda G. Gordon, Asst. U.S. Atty., Baltimore, Md., Diane C. Moskal, Regional Attorney, Michael P. Meehan and Thomas A. Dougherty, Jr., Asst. Regional Attorneys, Dept. of Health and Human Services, Philadelphia, Pa., Randolph W. Gaines, A. George Lowe, and Gabriel L. Imperato, Dept. of Health and Human Services, Baltimore, Md., for defendant.

## MEMORANDUM

JAMES R. MILLER, Jr., District Judge.

On June 27, 1983 the plaintiffs filed a putative class action to challenge the actions of the Secretary of the United States Department of Health and Human Services (HHS) in terminating the plaintiffs' social security disability benefits under the Old Age, Survivors, and Disability Insurance Act, 42 U.S.C. §§ 401 *et seq.* The plaintiffs consist of both prior recipients of disability benefits who have lost those benefits and current recipients who expect to lose those benefits. Specifically, they challenge the

Secretary's regulation terminating benefits in "[t]he month in which [their] impairment, as shown by current medical or other evidence, is such that [they] are able to do substantial gainful activity," 20 C.F.R. § 404.1594(b)(1) (1980). They contend that the regulation is (1) contrary to 42 U.S.C. §§ 416(i)(2)(D)(ii) and 423(a)(1) which indicate that recipients are entitled to benefits until such time as their disability "ceases" and (2) contrary to established judicial precedent. It is the plaintiffs' position that benefits can be terminated only upon a showing of improved medical condition, not merely on a showing of their ability to return to substantial gainful activity.

On July 12, 1983, the State of Maryland; Ruth Massinga, Secretary of the Maryland Department of Human Resources; and Charles R. Buck, Jr., Secretary of the Maryland Department of Health and Mental Hygiene, sought to intervene as party plaintiffs on the allegation that the individual plaintiffs terminated by HHS would turn to the State of Maryland for financial and medical assistance at expense to the State. HHS opposed the motion and the court held a hearing by telephone. The court also considered the written submissions of both HHS and the State.

HHS opposed intervention on several grounds including, *inter alia,* lack of subject matter jurisdiction and lack of standing. Because this court concludes that the State defendants do not have standing, it will not address the other jurisdictional issues.

■ The law of standing restricts "[t]he power of [federal courts] to declare the rights of individuals and to measure the authority of governments" to only those cases where there is a "real, earnest and vital controversy." *Valley Forge Christian College v. Americans United,* 454 U.S. 464, 471, 102 S.Ct. 752, 757, 70 L.Ed.2d 700 (1982).

"As an incident to the elaboration of this bedrock requirement, this Court has always required that a litigant have 'standing' to challenge the action sought to be adjudicated in the lawsuit. The term 'standing' subsumes a blend of constitutional requirements and prudential considerations, and it has not always been clear in the opinions of this Court whether particular features of the 'standing' requirement have been required by Art. III *ex proprio vigore,* or whether they are requirements that the Court itself has erected and which were not compelled by the language of the Constitution."

*Id.* at 471, 102 S.Ct. at 758 (citations omitted).

■ Article III of the Constitution at an "irreducible minimum" requires the party invoking the court's authority to "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." 454 U.S. at 472, 102 S.Ct. at 758, citing *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99, 99 S.Ct. 1601, 1607, 60 L.Ed.2d 66 (1979).

The court has some doubt whether the intervenors' injury can "fairly be traced to the challenged action" in light of the Supreme Court's decision in *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976). The court rests its decision, however, not on the constitutional requirements of standing, but on prudential principles.

"[A] plaintiff may still lack standing under the prudential principles by which the judiciary seeks to avoid deciding questions of broad social import where no individual rights would be vindicated and to limit access to the federal courts to those litigants best suited to assert a particular claim." *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99–100, 99 S.Ct. 1601, 1607–08, 60 L.Ed.2d 66 (1979). Three such rules have been identified. They require (1) that the plaintiff assert his own legal rights and not those of third parties, (2) that the plaintiff's injury not be one that is shared by all or a large class of citizens such that it is a "generalized grievance" and (3) that the plaintiff's interest come within the "zone of interests" arguably protected or regulated by the law in question. *See* C. Wright, *The Law of Federal Courts* 70–71 (4th ed. 1983).

The prudential principle at issue in this case is the latter, identified in *Association of Data Processing Service v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970).[1] *See also Valley Forge Christian College v. Americans United, supra* 454 U.S. at 475, 102 S.Ct. at 760; *Simon v. Eastern Kentucky Welfare Rights Organization, supra,* 426 U.S. at 39 n. 19, 96 S.Ct. at 1925 n. 19; *Gladstone, Realtors v. Village of Bellwood, supra* 441 U.S. at 100, 99 S.Ct. at 1608. The "interest sought to be protected by the complainant [must be] arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." 397 U.S. 153, 90 S.Ct. at 830.

The zone of interest test focuses on the relationship between the alleged injury, the plaintiff, and the relevant statute. "[T]he critical inquiry is whether the statutory provision on which the claim rests ... can properly be understood as granting persons in the position of [the plaintiff] a right to judicial relief." *Davis Forestry Corp. v. Smith,* 707 F.2d 1325, 1328 (11th Cir.1983). The District of Columbia Court of Appeals has stressed that the test is a "generous" one requiring only that the plaintiff assert an interest "which is arguable from the face of the statute." *Community Nutrition Institute v. Block,* 698 F.2d 1239, 1250 (D.C. Cir.1983), citing *Tax Analysts v. Blumenthal,* 566 F.2d 130, 142 (D.C.Cir.1977), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978).

█ Notwithstanding the generosity of the test, the statute at issue here does not even arguably protect an interest asserted by the intervenors.

"The old-age and disability insurance aspects of the Social Security system do not purport to be general public assistance laws that simply pay money to those who need it most. That was not the predominant purpose of these benefit provisions when they were enacted or when they were amended. Rather, the primary objective was to provide workers and their families with basic protection against hardships created by the loss of earnings due to illness or old age."

*Mathews v. DeCastro,* 429 U.S. 181, 185–86, 97 S.Ct. 431, 434, 50 L.Ed.2d 389 (1976).

The Old Age, Survivors, and Disability Insurance Act (OASDI), established under Title II, is an earnings-based insurance program funded by wage earners and is set up as a trust fund administered by the Social Security Administration. As such, it is distinguishable from Supplemental Security Income (SSI), paid under Title XVI, which is a federally-funded public assistance program providing minimum subsistence benefits to persons 65 years or older, and to persons under 65 years who are blind or disabled and whose income falls below a prescribed level. SSI, but not OASDI, replaced state-administered welfare programs providing the same coverage.

The State intervenors challenge the validity of the Secretary's termination regulations because of their interest in the State financial integrity. OASDI is not concerned with, nor does it seek to protect, state public assistance programs. Rather, it provides insurance coverage for wage earners. The termination provisions of the statute protect wage earners and the financial integrity of the OASDI trust fund, but they do not, without stretching inferences to the extreme, encompass the interest of the State intervenors. Whether the interest of the State intervenors would be protected in a challenge under Title XVI is a question not before this court.

The court finds support for its decision in several recent cases. In *Pennsylvania Pharmaceutical Association v. Department*

---

1. The Eleventh Circuit has held that the "zone of interest" test has no application outside the context of the Administrative Procedure Act, *James v. Home Construction Co. of Mobile,* 689 F.2d 1357, 1358 (11th Cir.1982), but this decision preceded *Valley Forge Christian College v. Americans United,* 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). The Eleventh Circuit has subsequently applied the test in post-*Valley Forge* cases. *See Davis Forestry Corp. v. Smith,* 707 F.2d 1325 (11th Cir.1983); *Bank Stationers Association v. Board of Governors,* 704 F.2d 1233 (11th Cir.1983).

of *Public Welfare,* 542 F.Supp. 1349 (W.D. Pa.1982), the court held that the plaintiff pharmacists and pharmaceutical association did not have standing to challenge the state's plan of reimbursement to pharmacists for prescription drugs purchased by Medicaid recipients which plan allegedly failed to comply with the federal statute, 42 U.S.C. § 1396a (1974) and the applicable regulations promulgated by HHS. The court reasoned that they were not in the zone of interests protected by the Medicaid Act because "[t]he poor, not the health care providers, are the intended beneficiaries of the Medicaid Act." *Id.* at 1356.

Similarly, the District Court for the Middle District of Alabama denied standing to a private physician and the Medical Association of the State of Alabama to challenge the constitutionality of the Public Health Service Act and the validity of the regulations of the Secretary of HHS promulgated pursuant to the Act. *See Medical Association of Alabama v. Schweiker,* 554 F.Supp. 955 (M.D.Ala.1983). The plaintiffs in that case alleged economic injury resulted from the competition afforded them by community health centers established pursuant to the Act in Alabama. Finding the requisite constitutional injury, Judge Thompson of that court nevertheless denied them standing because they did not fall within the zone of interests Congress intended to protect.

"The face of these statutory provisions clearly reflects that they were designed to provide medical assistance to persons living in medically underserved areas; and the zone of interest to be protected by these provisions is the medical welfare of the persons living in these areas." *Id.* at 962.

The Old Age, Survivors and Disability Insurance Act, no less than the Medicaid Act and the Public Service Health Act, was intended to benefit its recipients and not the states in maintenance of their public assistance programs.

For the foregoing reasons, the Motion to Intervene has been denied previously by separate Order.